JAMES W. NUTTING v. SAMUEL BURKED.

*Statement of exceptions by referee—Presumption of regularity—Delay in forwarding bank drafts—Findings.*

Where no exceptions have been settled by a referee himself, the exceptions filed in the circuit court can bring up no questions except such as bear on the legal correctness of the judgment as sustained by the findings. The proceedings before the referee must be presumed regular. *Abbott v. Mathews* 26 Mich. 176.

Bank drafts issued for negotiable purposes are not required to be forwarded at once for acceptance and payment, and delay for a reasonable time will not discharge an endorser, although longer than might be held reasonable in regard to mere private drafts not meant to circulate.

Plaintiff, who was a ticket agent of the Michigan Central Railroad but acting on his individual responsibility in this transaction, accepted from various persons sums of money and a bank draft on New York on deposit, with a right in the depositors to recall their money or take tickets for an excursion to the West which was to leave on the 14th of April, 1875, the draft being received on the 9th. On the 14th the parties took their tickets, and plaintiff on the next day in the usual course of business made up his ticket account and forwarded the draft. The referee held the delay reasonable. *Held,* that this finding was not legally erroneous.

A finding cannot be disturbed unless in violation of some rule of law.

48 MICH.—16

Error to Jackson. Submitted Apr. 11. Decided Apr. 25.

Assumpsit. Defendant brings error. Affirmed.

*A. & C. A. Blair* for appellant. The holder of a draft is inexcusable for delay in forwarding it unless by agreement with the acceptor: *Darnall v. Morehouse* 45 N. Y. 69; *First Nat. Bank v. Fourth Nat. Bank* 77 N. Y. 320.

*Conely & Lucking* for appellee. A sight draft must be presented for payment within a reasonable time: 1 Dan. Neg. Inst. § 448-9; what is a reasonable time is a question of law for the court, where there is no dispute as to facts: *Mohawk Bank v. Broderick* 13 Wend. 133; *Prescott Bank v. Caverly* 7 Gray 221; *Walsh v. Dart* 23 Wis. 335; the special circumstances of any case may be shown to rebut any presumption of negligence, which would arise from any unexplained delay: *Phœnix Ins. Co. v. Allen* 11 Mich. 501, 510-12; *Phœnix Ins. Co. v. Gray* 13 Mich. 191; *Mohawk Bank v. Broderick* 13 Wend. 133, 135-6; *Prescott Bank v. Caverly* 7 Gray 221; *Walsh v. Dart* 23 Wis. 334-5; *Nat. Bank v. Second Nat. Bank* 63 Pa. St. 404; great liberality prevails on the question of what is due diligence: *Montelius v. Charles* 76 Ill. 303; *Jordan v. Wheeler* 20 Tex. 698; *Nichols v. Blackmore* 27 Tex. 586; *Andrus v. Waring* 20 Johns. 153; 1 Dan. Neg. Inst. (2d ed.) §§ 465-473.

CAMPBELL, J. Nutting recovered judgment on a referee's report against Burked as endorser of a draft made by a private banking house in Eaton Rapids on a New York bank, which was dishonored on presentation. Certain dates become material. The draft was dated April 8, 1875,—delivered to plaintiff on April 9th,—forwarded by him April 15th to the treasurer of the Michigan Central Railroad, and thereafter transmitted in ordinary course through different channels until it was presented for payment in New York on the 21st and dishonored. It was protested regularly, but defendant on being notified of the dishonor

refused to pay because of the delay in presenting it. The drawers closed their doors and failed on the 16th of April, and their paper was thrown out in New York on that day. The referee finds that it usually took four or five days for drafts drawn by the Eaton Rapids house to reach New York for presentation. It also appears from his findings in regard to the general course of railroad office transactions that if Nutting had sent it forward without any delay whatever, it would be likely to reach New York on April 15th.

The explanation of the transaction was substantially this: Nutting was railroad agent at Decatur, with no authority to accept anything but money for the tickets sold, and held to account personally for any acceptance of paper or other thing in lieu of money. An excursion had been projected from Decatur to San Francisco, by persons living in Decatur, and rates had been obtained from the railroad at $59.05. Applications were made in advance by those proposing to go, and Nutting took deposits and gave back receipts which the depositors could use either to get tickets in case they chose to go on the excursion, or to withdraw their money if they did not determine to go. These receipts all purported to be for the specified sum "on deposit" for passenger ticket between the two places.

On the 9th of April, Burked, who lived in Decatur, obtained three of these receipts from Nutting in the names of three persons in Eaton Rapids, and gave him the draft in question which he received instead of money. On the 14th of April these persons surrendered their receipts, as did other passengers, and took tickets. Some persons drew money instead of tickets. That was the day the excursion started; and thereupon Nutting made up his ticket account and sent forward the money and this draft to the treasurer of the road the next morning,—this being the usual course in regard to such transactions,—and on non-payment he was obliged to make its amount good. The question is whether he was legally bound to send on the draft earlier.

It appears that the Eaton Rapids bankers had no funds in New York after the 13th of April. It is found no drafts

were thrown out till the 16th, but it is not found whether any were presented between the 13th and 16th and paid, and it is not found that the draft would have been paid if it had reached New York earlier than the 16th.

The referee found that there had been no unreasonable delay in forwarding the draft, and that it was not illegal or improper for Nutting to keep it until the receipts were surrendered and tickets taken on the 14th.

Before considering this question it is necessary to refer to some objections taken to the action of the referee. Complaint is made that his findings are not properly separated as to fact and law, and that defendant had no opportunity to settle exceptions. The record does not show how this last matter in fact was, but, however it may have been, this Court, in considering the report and the exceptions to it upon writ of error to the circuit court for giving judgment on it, cannot look behind the report and must assume it to be correct. Action to have it corrected or set aside for questions of regularity must be had in a different way. We can only examine the record to see whether the facts found by the referee are such as to render the judgment erroneous. If the judgment is not necessarily wrong it cannot be reversed.

From the finding it does not appear that any earlier forwarding of the draft would have found funds in New York to pay it, or would have secured its payment actually or probably. The referee has not so found, and we have no means of knowing what testimony may have existed bearing on that question.

The question is reduced to the single inquiry whether by retaining this draft from the 9th to the 14th of April the plaintiff held it at his own risk and discharged the endorser.

It was the referee's opinion that he held it on deposit until the tickets were taken on the 14th and that he was not bound to forward it before. There is no finding in the case whether such a length of time would be ordinarily unreasonable to keep such a draft out of circulation. Unless there is some inflexible rule of law to the contrary, we cannot overrule his conclusion.

So far as this transaction is concerned it is, except in one particular, the ordinary case of the sale of a bank draft, issued for commercial purposes, and not in payment of a bank debt, and as such commercial draft transferred for value by Burked to Nutting. But the contract out of which the value rose was not a present and final sale of tickets which Burked or his principals received out and out, so that the draft could be treated as given in absolute payment. On the contrary the payment was to be no payment until the final determination to accept the tickets, and had they not been accepted there was nothing to be paid at all, and the deposit was to be returned. All of this arrangement was conditional and not within the ordinary course of the ticket agency. The agent throughout acted in regard to money and draft as if he considered the transaction as provisional. There is nothing in the case to indicate that he would have discounted the draft in cash, or that this was expected. The case finds that he took the draft just as he took the money, and the money was not taken to be retained except after the tickets should be called for. It is not found and it is by no means likely that either Nutting or Burked had any idea that the draft was of doubtful quality, or required any especial attention beyond other similar paper that is used for convenience in commercial affairs.

A distinction is recognized between bills drawn by private persons in particular affairs and bills which are dealt in by bankers in the sale of exchange, and the rule of diligence is much more liberal in regard to the latter, which are very generally used as a species of circulating medium and sold by the holders, and therefore not regarded as designed for immediate presentation in any strict sense. See Story on Bills § 472 and notes. In these cases, as in others, unreasonable delay will no doubt discharge the endorsers, and what is reasonable will be determined by the circumstances. Upon this there is no dispute. But when an endorser claims to be discharged, it must appear that the holder is in fault. And he is not in default if he has not acted unreasonably. We are not satisfied that the finding of the referee in this

case, in his inferences of fact and law, shows that Nutting was in fault. We cannot say as matter of law that he had not a right to retain the draft for the purpose of ascertaining whether the ticket would be taken. It is to be assumed on this finding that he acted in good faith, and did what he supposed he had a right to do, in keeping the draft as a deposit, as he kept the money as a deposit. The amount did not belong to the railroad company until the tickets were taken, and we do not think we can hold the referee legally erred in treating the paper as held on deposit or in holding the delay not to have been unreasonable.

Error must be distinctly made out as matter of law, before the finding can be disturbed. We therefore are of opinion that the judgment below should be affirmed with costs.

The other Justices concurred.