## HARMON S. HOLMES v. CHARLES ROE.

*Bank check—Must be presented, at latest, day after received if parties are in same town—If not, day after receipt by correspondent to whom sent for collection—In absence of special circumstances excusing delay—Such presentment only necessary to charge drawer where banker fails during such period—Particular hour during such period unimportant—Presentment after such failure, if within such period, sufficient—Time may be extended by express or implied assent of drawer—Testimony tending to prove and disprove such assent—Should be submitted to the jury under proper instructions.*

1. Where the person receiving a check, and the banker on whom it is drawn, are in the *same* place, in the absence of special circumstances it must be presented for payment the *same* day, or, at *latest*, the *day after*, it is received; but if in different places, the check must be forwarded for presentment on the day *after* it is received, at the *latest*, and the agent to whom it is forwarded must present it for payment, at the *latest*, the day after *he* receives it. (See authorities cited on page 203 of opinion.)

2. Such presentment is only necessary to charge the drawer when the banker has become insolvent or failed between the time the check was received and the time when it should have been presented, which latter act need not be at any particular hour within such prescribed period, and a presentment within such period, although after such failure, is sufficient.

3. The time for such presentment may be extended by the *express* or *implied* assent of the drawer; and in a suit by the payee against the drawer to recover the amount due on a protested check, which was not presented for payment within the prescribed time, within which period the banker became insolvent, testimony tending to show and to negative such assent should be submitted to the jury under proper instructions.

Error to superior court of Detroit. (Chipman, J.) Argued June 16, 1886. Decided July 1, 1886.

Assumpsit. Plaintiff brings error. Reversed. The facts are stated in the opinion and head-notes.

*Edwin F. Conely*, for appellant:

The question of plaintiff's diligence should have been submitted to the jury: *Freiberg v. Cody*, 55 Mich. 108.

He was not, as a matter of law, negligent because he took the check home with him; the testimony tends strongly to show that such ·was the arrangement with the defendant: *Woodruff v. Plant*, 41 Conn. 344; 2 Daniel on Neg. Ins. 554.

The drawer of a check is regarded as the principal debtor, and it purports to be made upon a fund deposited to meet it; and negligence of the holder in not making due presentment, or in not giving him notice of dishonor, does not absolutely discharge the drawer from liability, unless he has suffered some loss or injury from such negligence, and then only to the extent of such loss or injury. It is not enough to show *probability* of injury,—it must be proved : 2 Daniel on Neg. Ins. 545 (notes 1, 2, and cases cited); *Syracuse R. R. Co. v. Collins*, 57 N. Y. 641; *Bell v. Alexander*, 21 Gratt. 1.

*Henry M. Cheever*, for defendant :

The delay in the presentment of the check discharged the drawer. It is only where there has been actual loss, or the drawer has been actually prejudiced by the delay, as by the failure of the bank holding his funds, that the question arises : *Serle v. Norton*, 2 Moody & Robinson, 401; *Robinson v. Hartford*, 6 Q. B. 52.

Greater diligence is required in the case of checks than in case of bills of exchange : *Mohawk Bank v. Broderick*, 10 Wend. 304.

The holder of a check is bound to present it *promptly* for payment : *First Nat. Bank Jersey City v. Leech*, 2 Ames' Cases, 746.

As to *what* is held to be *reasonable* diligence in New York and Wisconsin, see *Darnall v. Morehouse*, 45 N. Y. 64; *Jones v. Heiliger*, 36 Wis. 149.

See, also, in this connection, *Matter of Brown*, 2 Story, 517.

*This* rule is applicable where the parties reside or do business in the *same* place where the bank is located : *Middletown Bank v. Morris*, 28 Barb. 621; *Remer v. Downer*, 23 Wend. 623.

As to the rule in Michigan, see *Phœnix Ins. Co. v. Allen*, 11 Mich. 501, and *Same v. Gray*, 13 Id. 191; *Atwood v. Cornwall*, 28 Id. 343; *Freiberg v. Cody*, 55 Id. 108.

Where the parties to the check are doing business in the *same* city where the bank is located, the time for presentation seems to be well settled to be within *two* days : *Smith*

*v. Janes*, 20 Wend. 192 ; *Mohawk Bank v. Broderick*, 10 Id. 304; *Merritt v. Todd*, 23 N. Y. 41 (Judge Hoyt's dissenting opinion); *Plato v. Reynolds*, 27 Id. 586 ; *Smith v. Miller*, 52 Id. 545.

See, also, *Nutting v. Burkhed*, 48 Mich. 241 ; Morse on Banks & Banking, 280 ; *S. B. & N. Y. R. R. Co. v. Collins*, 3 Lansing, 32 ; *Harbeck v. Craft*, 4 Duer, 129 ; *Kelty v. Second Nat. Bank of Erie*, 52 Barb. 334.

What is reasonable time is *usually* a question for the jury, but in cases of *great* negligence, or where the facts are not disputed, it is a question of law : *Smith v. Janes*, 32 Am. Dec. 527 ; *Remer v. Downer*, 23 Wend. 623.

CHAMPLIN, J.   Plaintiff resided and did business as a general merchant at Chelsea, distant about fifty-five miles from Detroit, on the Michigan Central Railroad.   He did his business with the Chelsea Savings Bank.

On the eighth day of August, 1885, at the stock-yards in that portion of the city of Detroit called Springwells, the plaintiff sold to defendant a number of sheep, for $431.60, and received in payment defendant's check on Vincent J. Scott's Banking Office.   Scott was a private banker, doing business in the city of Detroit.   The parties differ as to what was said at the time the check was given.

The plaintiff testifies :

" We stepped into the office there, and Mr. Roe made this bill; and he says to me, 'You want a check for this?'   And I said, 'Yes.'   He said, 'How do you want that check made payable?'   I said, 'I want it payable to order, because I wantt ot ake it home.'   He immediately says :   'All right; if you think my check is not good, go down to the bank and have it certified.'   'Of course,' I said, 'it is not necessary to do that.   Everybody here knows you, and they all tell me you are good.'   And so he wrote me the check for $431.60. When I got it I inquired of several there, and among the rest was Mr. Sly, a drover, if Mr. Roe was good, and they all told me that Mr. Roe was A No. 1 ; so I didn't think it was necessary to have the check certified, and I put the check in my pocket.

" *Q*. Wait a moment.   Let me call your attention to that transaction.   Was anything said to you by Mr. Roe, or by him to you, with reference to your being bothered by currency ?

"*A.* I gave him to understand, of course, that I didn't want to be bothered with currency.

"*Q.* State what he said, as near as you can give it?

"*A.* I says to him, 'How much more convenient it is to do business through the banks than to be bothered with currency.' Of course, I don't know whether he made any reply to that at all. I made that remark to him."

The defendant testified with regard to the transaction as follows:

"*Q.* I call your attention to the time you gave this check to Mr. Holmes. He gave his testimony as to what conversation you had about the check when he said he wanted to take it home, and the question I put to him was whether you didn't say to him if he was going to do that he had better get it certified, or get New York Exchange. What is the fact as to that?

"*A.* I spoke to Mr. Holmes, and asked him, 'How will you have this check made,' —to his order, or bearer; and he said: 'You can make it to my order. I think I will take it home, if I can strike this train coming out here.' I said: 'If you are going to take this home, you can either get it certified or get a New York draft; that is what you want to do if you are going to take it home.' And Mr. Taylor heard the conversation, too."

After receiving the check, which was given between 8 and 9 o'clock in the forenoon, the plaintiff went to the depot of the Michigan Central Railroad, where he arrived at about 11 o'clock, where he remained until about 1 o'clock in the afternoon before taking the train for home. He had plenty of time, had he been so disposed, to have presented the check at Scott's bank for payment or certification before the departure of the train.

He arrived home in Chelsea about 4 o'clock, and deposited the check, with other funds belonging to him, in the Chelsea Savings Bank the same evening. This was on Saturday evening. The Chelsea Savings Bank forwarded the check to its correspondent in Detroit by depositing it in the post-office at Chelsea the same evening. The next regular mail from Chelsea to Detroit would be on Monday morning.

The check reached the correspondent of the savings bank,

which was the Mechanics' Bank, on Monday, the tenth day of August, at about 1 o'clock and thirty minutes in the afternoon ; and on the afternoon of the next day the Mechanics' Bank presented the check at the banking office of Vincent J. Scott, and demanded payment, which was refused. Vincent J. Scott failed on the afternoon of August 10, and his bank closed its doors at 4 o'clock P. M.

. The defendant had sufficient funds in Scott's bank to pay the check, and had it been presented for payment at any time prior to 4 o'clock of August 10 it would have been paid. The check was duly protested, and was taken up by the plaintiff, and this action brought upon the check to recover the amount thereof.

The defense is that the check was not presented in a reasonable time, and, because of plaintiff's negligence, the defendant is discharged from liability.

The law is well settled that if the person who receives the check, and the banker on whom it is drawn, are in the same place, the check must, in the absence of special circumstances, be presented the same day, or, at latest, the day after, it is received : *Simpson v. Pacific Mut. Life Ins. Co.* 44 Cal. 139 ; *Cawein v. Browinski,* 6 Bush, 457 ; *Schoolfield v. Moon,* 9 Heisk. 171 ; *Alexander v. Burchfield,* 7 Man. & G. (49 E. C. L.) 1061 ; *Boddington v. Schlencker,* 4 Barn. & Adol. 752 ; *Moule v. Brown,* 4 Bing. N. C. 268.

If, however, the person who receives the check, and the banker on whom it is drawn, are in different places, in the absence of special circumstances the check must be forwarded for presentment on the day after it is received, at the latest ; and the agent to whom it is forwarded must, in like manner, present it, at the latest, on the day after he receives it: *Hare v. Henty,* 30 Law J. C. P. 302 ; *Prideaux v. Criddle,* L. R. 4 Q. B. 455 ; *Griffin v. Kemp,* 46 Ind. 176 ; *Woodruff v. Plant,* 41 Conn. 344 ; *Burkhalter v. Second National Bank,* 42 N. Y. 538 ; *Bond v. Warden,* 1 Colly. 583 ; *Firth v. Brooks,* 4 Law T. (N. S.) 467.

Presentment within the time above stated is only necessary to charge the drawer when the banker has become

insolvent or failed between the time when the check was received and the time it should have been presented.

The rule of diligence does not require the presentment to be made at any particular period within the time limited by the law as a reasonable time; consequently the payee or holder of the check does not lose his right to recover by the stoppage of the bank within the prescribed period, provided the check is presented, though subsequent to the stoppage, within the period: Grant, Bank. 57.

In this case the bank upon which the check was drawn, and the person receiving it, were in the city of Detroit, and, in the absence of special circumstances, it should have been presented on Monday, August 10, at latest. The plaintiff claims there were special circumstances which excused presentment within that time, and he bases this assumption upon the plaintiff's testimony.

Nothing is plainer than that the time may be extended by the assent of the drawer, express or implied. If the plaintiff's version of the affair is the true one, there was an implied assent to an extension of time; for if the defendant assented to plaintiff's taking the check home with him to Chelsea, he assented to its being forwarded from that place in the ordinary mode, which would bring it within the second principle above stated, and plaintiff would have had the whole of Tuesday in which to present the check.

On the other hand, if the defendant's version is believed, then Monday was the latest day upon which it could be presented; for, according to his statement, he consented to no delay, but, on the contrary, what he said plainly implied that he refused to remain responsible if plaintiff saw fit to take the check home. The evidence upon this point should have been submitted to the jury, under proper instructions applicable to the testimony given by each of the parties.

We agree with the learned judge who presided at the trial that the clearing-house, and the method of conducting business through it, had no bearing upon the merits of the case. It follows that the judgment must be reversed, and a new trial granted.

The other Justices concurred.