THE PEOPLE v. JOSEPH B. KEMP.

*Criminal law—Forgery—Indorsement on negotiable paper—Check defined—Evidence—Record kept at Ionia House of Correction—Election of counts.*

1. All bills of exchange are orders for money, and an information for forging a bill of exchange, setting forth the instrument in full, and stating what particular part was forged, and calling it "an order for money," is not bad on that account.

2. A check is a bill of exchange, drawn by a customer upon his banker, payable on demand.

3. All checks come within the meaning and definition of a bill of exchange, but all bills of exchange are not checks. They are commercial paper, and are governed by the same rules as to presentment and notice of non-payment as *inland* bills of exchange, payable on demand. *Freiberg v. Cody,* 55 Mich. 108; *Holmes v. Roe,* 62 Id. 199; *Sweet v. Swift,* 65 Id. 90.

4. The forging of the indorsement upon a check is punishable under the statute which makes it a crime to forge an indorsement upon a bill of exchange.

5. Where the superintendent of a corporation was in the habit of forwarding invoices of lumber purchased to the home office, and of receiving checks payable to the order of the vendors for delivery to them, and was prosecuted criminally for the alleged forgery of the indorsement on one of said checks, testimony respecting the invoices, the drawing and forwarding of the checks, their payment by the bank, and their condition when presented for payment, is *relevant* to establish the forgery and uttering of the paper.

6. In *such* a case testimony is admissible tending to show that the respondent had forged and uttered *other* checks of a similar character *prior* to the time of the forgery alleged in the information, for the purpose of showing the fraudulent character of the act of the respondent in passing the paper alleged to have been forged.

7. The principal criminal element in forgery consists in the fraudulent purpose, and the proofs of fraud must be substantially the same in criminal and civil cases. It can only be made clear by a full understanding of the entire surroundings of the transaction. *People v. Marion*, 29 Mich. 37.

8. Where a principal forwarded to an agent a check on receipt of an invoice of lumber alleged to have been purchased by the agent, payable to the order of the *vendor*, and on the trial of the agent for the alleged forgery of the name of the *vendor* to the check the testimony was conflicting as to the *existence* of any such person as the *vendor*, which question was fully gone into upon both sides, it became one *solely* for the jury to determine under the testimony.

9. The record kept by the clerk of the House of Correction at Ionia pursuant to How. Stat. §§ 9771, 9772, is a public record, and may be introduced in evidence whenever its contents are material to the issue; or certified copies may be introduced under How. Stat. § 7504.

   So *held*, where on the trial of a forgery case the *existence* of the person whose name was alleged to have been forged was in issue, and the respondent introduced testimony tending to show that such person drove team for one of the *keepers*, delivering wood at the prison during certain years, and that on one occasion in a certain month the *keeper* introduced such person to one of respondent's witnesses in Grand Rapids, and the people on rebuttal introduced the records kept by the clerk of the prison, which showed that such *keeper* was present and on duty at the prison on every day in the month referred to, and the days and dates that his team was employed, and that it was *then* driven by convicts.

10. Where the *existence* of a certain person was in issue in a suit, and testimony was introduced tending to show that he worked for a certain party, then deceased, at a given date, and the books kept by such employer showed his accounts with his *other* employés during the period stated, but the name of *such* person did not appear thereon, such books are admissible in evidence, the absence of such name being a circumstance which it was competent to show.

11. A prosecutor cannot be required to elect upon which of four counts he will claim a conviction, when all of the counts are for the forging and for uttering the same identical indorsement upon a check, and the same check and indorsements are set out in *each* count of the information.

Error to Ionia. (Smith, J.) Argued June 21, 1889. Decided October 11, 1889.

Respondent was convicted of forgery. Conviction affirmed. The facts, and points of counsel *passed* upon by the Court, are stated in the opinion.

*Geo. E. Nichols* (*W. W. Mitchel* and *Edwin F. Conely*, of counsel), for respondent.

*S. V. R. Trowbridge*, Attorney General, and *A. A. Ellis*, *acting* Prosecuting Attorney, for the people.

CHAMPLIN, J. In 1884, M. J. Murphy & Co. was a corporation, organized and existing under the laws of the State of Michigan, having its principal office for the transaction of its business in the city of Detroit. In that year this corporation entered into a contract with the proper authorities for the employment of convicts, in the manufacture of chairs, at the State House of Correction and Reformatory at Ionia.

In carrying on this branch of its business the corporation purchased considerable quantities of lumber from different parties, which was delivered at the prison. The respondent, Kemp, was a stockholder in the corporation, and from November, 1884, until July, 1887, had entire charge of its business at Ionia as its superintendent and general manager. The manner in which the business was conducted in the purchase of lumber was for Kemp to make the purchases, and forward to the home office in Detroit the bills or invoices of purchase from time to time, showing the date, from whom purchased, and the quantity and price; and the corporation

would forward by mail from the home office a check upon the People's Savings Bank in Detroit for the amount, payable to the order of the person furnishing the lumber.

After the business had been conducted in this manner for some time, Kemp requested that the checks should be sent directly to him for delivery to the parties, giving as a reason that the parties delivering lumber disliked to be obliged to be running to the post-office for their checks, and preferred to get them where they delivered their lumber. After this request the checks were mailed directly to Kemp, that he might deliver them to the payees named therein. During the time and between September 29, 1885, and December 15, 1886, Kemp sent to the home office by mail several invoices of lumber, purporting to have been purchased of James Faber; the total amount being 145,713 feet, at a cost of $1,602.68.

Among the checks sent to Kemp to pay James Faber for lumber was one for $137.94, dated May 14, 1886.

It is claimed on the part of the people that these invoices were false and fraudulent; that the person named in the invoices was a myth; and that Kemp, when he received the checks payable to the order of James Faber, either forged the name "James Faber" upon the back of the checks or caused it to be done; and that he uttered the checks so forged as true, with the knowledge that the name "James Faber" was forged, with intent to defraud. These checks came back to M. J. Murphy & Co., in the regular course of business, through its banker, the People's Savings Bank of Detroit, and, when so received from the bank, they were indorsed with the names "James Faber," and below it "J. B. Kemp." The checks so indorsed were first presented to and paid by the banking-house of W. C. Page & Co., at Ionia, Michigan, and by them remitted to the People's Savings Bank of Detroit for credit.

An information was filed against Kemp charging him with

forgery, and with uttering an order for money, knowing it to be forged, with intent to defraud; upon which he was tried and convicted of the offense of knowingly uttering a false, forged, and counterfeited indorsement upon the back of an order for the payment of money, as true, with intent to cheat and defraud as charged.

There are five counts in the information.

The fourth reads as follows:

"That said Joseph B. Kemp, heretofore, to wit, on the fourteenth day of May, A. D. 1886, at the city of Ionia aforesaid, having in his possession a certain other order for money, whose tenor is as follows, to wit:

" ' $137.94.          M. J. MURPHY & CO.,          No. 8,819
                              " ' DETROIT, MICH., May 14, 1886.
" ' Pay to the order of James Faber one hundred thirty-seven and 94-100 dollars.
                                        " ' M. J. MURPHY & CO.
                              " ' Geo. E. Wasey, Sec'y-Treasurer.
" ' TO PEOPLE'S SAVINGS BANK,
                    " ' Detroit, Mich.'

" Upon which said order for money there was then and there a certain false, forged, and counterfeited indorsement in the words following, that is to say, 'James Faber,'—feloniously did utter and publish as true said false, forged, and counterfeited indorsement of said order, with intent then and there to injure and defraud, he (the said Joseph B. Kemp), at the time he so uttered and published said false, forged, and counterfeited indorsement of said order, then and there well knowing the said indorsement to be false, forged, and counterfeited."

The statute under which the respondent was charged reads as follows:

" Every person who shall falsely make, alter, forge, or counterfeit any   *   *   *   bill of exchange, promissory note, or any order   *   *   *   for money or other property, or any acceptance of a bill of exchange, or indorsement or assignment of a bill of exchange or promissory note for the payment of money,   *   *   *   with intent to injure or defraud any person, shall be punished," etc. How. Stat. § 9213.

"Every person who shall utter, and publish as true any false, forged, altered, or counterfeited   *   *   *   instrument or other writing mentioned in the preceding section, knowing the same to be false, altered, forged, or counterfeit, with intent to injure or defraud as aforesaid, shall be punished," etc.   Id. § 9214.

Upon the trial of the cause counsel for Kemp objected to the introduction of any testimony under the fourth count above quoted, for the reason that there is no such offense known to the statute, and this objection is insisted upon here, and the position is taken that this statute cannot, by its terms or the language therein used, be construed to cover the forging or the uttering of an indorsement upon an order for the payment of money; that the statute does not make it a crime to forge an indorsement upon an order for the payment of money; that the statute applies only to the forging of indorsements upon two classes of instruments, namely, bills of exchange and promissory notes.

It is true that the information denominates the instrument "an order for money," but it sets out the instrument in full, and the indorsements thereon, and states that the forgery consisted of forging the name "James Faber," indorsed thereon, so that it makes no difference by what name the pleader calls the instrument, if it is set forth in full and is embraced in the terms of the statute.   All bills of exchange are orders for money, and an information for forging a bill of exchange, setting forth the instrument in full, and stating what particular part was forged, and calling it an order for money, would not be bad on that account.

The instrument set forth in the information is a check, and a check is a bill of exchange, drawn by a customer upon his banker, payable on demand.   *Eyre v. Waller*, 29 Law J. Exch. 246; *Hopkinson v. Forster*, L. R. 19 Eq. 74; *Forster v. Mackreth*, L. R. 2 Exch. 163; *Harker v. Anderson*, 21 Wend. 372; *Bickford v. Bank*, 42 Ill. 238; *Bowen v. Newell*, 8 N. Y. 190; *Attorney General v. Insurance Co.*, 71 Id. 330;

*Culter v. Reynolds,* 64 Ill. 321; *Morrison v. Bailey,* 5 Ohio St. 13.

All checks come within the meaning and definition of a bill of exchange, but all bills of exchange are not checks. The main distinctions between them are pointed out in *Bank v. Bank,* 10 Wall. 604, 647, and other cases cited above. They are commercial paper, and are governed by the same rules as to presentment and notice of non-payment as inland bills of exchange, payable on demand. *Holmes v. Roe,* 62 Mich. 199 (28 N. W. Rep. 864); *Sweet v. Swift,* 65 Id. 90 (31 N. W. Rep. 767); *Freiberg v. Cody,* 55 Id. 108 (20 N. W. Rep. 813).

The forging of the indorsement upon a check is punishable under the statute which makes it a crime to forge an indorse-- ment upon a bill of exchange, and the information in this case sufficiently charges the offense.

It is alleged that the court erred in receiving in evidence the orders, papers, and the testimony concerning them, before there was any attempt to offer proof of the *corpus delicti.*

We do not think that any error was committed in this respect. The proof introduced respecting the invoices, the drawing and forwarding of the checks, the payment thereof by W. C. Page & Co., and the condition they were in when presented to and paid by that company, was all relevant testimony to establish the forgery and uttering of the paper. The point is fully covered by the opinion in *People v. Marion,* 29 Mich. 31.

The court permitted the prosecutor to introduce testimony which tended to prove that the respondent had forged and uttered other checks at or prior to the time of the forgery alleged in the information, for the purpose of showing the fraudulent character of the act of the respondent in passing the paper alleged to have been forged. The court said:

" I understand the rule to be that the prior utterances of forged papers, knowing them to be forged, prior to the commission of the offense alleged, certainly have a tendency to show that there was a scheme on the part of the accused to get money in that way, and would be admissible in evidence, and upon that theory I receive them."

This ruling of the court is supported by the case of *People v. Marion*, above cited, where it is said (on page 37) that—

" The principal criminal element in forgery consists in the fraudulent purpose, and the proofs of fraud must be substantially the same in criminal and civil cases. It can only be made clear by a full understanding of the entire surroundings of the transaction."

The other papers introduced, and which the prosecutor claimed had been forged and uttered by Kemp, were of a similar kind to those in question, and were a part of the transaction relating to the business carried on at Ionia, and consisted of what was claimed to be false invoices of lumber purchased, for which checks were sent to Kemp by M. J. Murphy & Co. to be delivered to the persons named in the invoices. The testimony tended to show the scheme of respondent, and his intent to defraud M. J. Murphy & Co., and was admissible for that purpose as part of the *res gestæ*. *Perkins v. People*, 27 Mich. 386; 1 Archb. Crim. Pl. 366; *People v. Marion*, 29 Mich. 38, 39; *Carver v. People*, 39 Id. 786; *People v. Henssler*, 48 Id. 49 (11 N. W. Rep. 804).

After the testimony was all introduced on the part of the people, the counsel for respondent requested the court to take the case from the jury, or direct them to render a verdict of not guilty. This the court rightly refused to do. There was testimony in the case which, if believed, tended to show that Kemp forged the name " James Faber," and also that he uttered the check with the forged indorsement of the name of the payee, knowing it to be forged. The prosecutor introduced testimony which tended to prove (and it was for the jury to say that it did prove) that there was no

such person as James Faber who sold lumber to M. J. Murphy & Co.; that Kemp forwarded to the home office in Detroit invoices of lumber purchased by him of James Faber; that M. J. Murphy & Co. sent by mail to Kemp checks to be delivered by him to James Faber in payment for this lumber, which came back to it through the bank upon which they were drawn with the name of J. B. Kemp thereon as second indorser, in the genuine handwriting of respondent. These facts raised a strong inference that Kemp himself either forged the name "James Faber" upon the check, or caused it to be done, and there was opinion testimony to the effect that the name "James Faber" was written by respondent. The weight of this testimony, and its convincing effect, was for the jury.

A number of witnesses testified on behalf of respondent that they knew James Faber, and gave a particular description of his person, which was peculiar and marked; that he is a German, or foreigner, and was employed by one Henry Wiser, who owned a saw-mill at or near Muir, in Ionia county, to draw lumber for him to the prison at Ionia. At the time of the trial Wiser was dead, and it was the theory of the respondent's counsel that this James Faber hauled lumber to the prison, and that the check was a genuine payment for such lumber, and they requested the court to charge the jury that—

"Unless the prosecution have satisfied you beyond a reasonable doubt of the alleged forgery, and that there was no such man as James Faber hauling lumber to M. J. Murphy & Co. at the time of or about the time of the alleged forgery, and that no such man was in existence at that time, your verdict must be not guilty."

On the other hand, there was testimony introduced by the prosecutor that no such man as described by witnesses for respondent, or of his name, worked for Wiser at the time alleged, or any other time, and it was not explained why, if

the lumber hauled to the prison was Wiser's, who was well known to the prison authorities, and had recently been employed thereat, the invoices should be made out in the name of his hired man, and the checks delivered to him for payment therefor. The question of the existence of such a man as James Faber at that time, who was doing business with M. J. Murphy & Co. at the prison, was fully gone into upon both sides, and was one solely for the jury to determine under the testimony.

The errors alleged upon the ground of the reception of testimony, and the refusal to strike out immaterial testimony, we think should be overruled. It all had reference to the dealings between the respondent and the company in Detroit, and was relevant as having some bearing, more or less remote, upon the question at issue.

It is alleged as error that the court permitted the prosecution to introduce incompetent testimony before the jury. These assignments relate to the reception of the official records kept at the State House of Correction at Ionia, which showed the time when Henry Wiser was employed as keeper, and also the number of days he furnished a team to that institution, and to the reception of the books of account and time-book of Henry Wiser. It is claimed that the books kept by the clerk of the State House of Correction, etc., are not official records, and that there is no law making them evidence in any court.

The respondent had introduced testimony tending to show that Henry Wiser worked at the House of Correction during the years 1883, 1884, and 1885, and that he had a team which was used in hauling wood and lumber to the prison, and that such team was driven by James Faber; also that, upon one occasion, in November, 1884, Wiser introduced Faber to a witness by the name of Warfield, in Grand Rapids. The prosecution sought to rebut this testimony by the introduction of the records kept by the clerk, showing that Wiser was

present and on duty at the prison every day in November, 1884, and also the days and dates that his team was employed, and that it was then driven by convicts.

How. Stat. § 9772, requires the clerk of the House of Correction to keep the books and accounts of the institution in such a manner as to exhibit clearly all the financial transactions relating to it, and section 9771 requires the clerk to give bond to the people of the State in the penal sum of $10,000, conditioned that he will keep a true and honest record of the accounts of the institution, etc. The record kept by the clerk under this statute is a public record, and may be introduced in evidence whenever its contents are material to the issue; or certified copies thereof may be introduced under section 7504, How. Stat. There was no error in admitting the record in evidence for the objects stated.

We also think the books of Henry Wiser were properly admitted. As before stated, Henry Wiser was dead. The respondent had introduced testimony which tended to prove that James Faber worked for Wiser at or about the time the check in question was drawn. Other men, who were employed by Wiser at that time, testified that, at the same time they worked for Wiser, James Faber also worked for him. Wiser's books were identified and shown to be in his handwriting. The books were admitted merely to show that the name of James Faber did not appear upon them. He kept the account of the other men employed by him upon these books. The fact that Faber's name did not appear upon the books did not prove that he did not work for Wiser, but it was a circumstance which it was competent to show, and they would have been equally admissible for respondent if Faber's name had appeared upon them.

The case should not be reversed because of the remarks of the court respecting the witness Bush, nor, under the issue made in this case, because the court limited the counsel upon

each side to two expert witnesses as to the handwriting of the indorsement "James Faber" upon the check.

The court was not in error in refusing to require the prosecutor to elect upon which count he would claim a conviction. All the counts were for the forging and for uttering the same identical indorsement upon the check, and the same check and indorsements were set out in each count of the information. In such case, the prosecutor should not be required to elect.

Error is assigned upon the refusal of the court to charge as requested, and to the charge as given. It is claimed that the testimony was not sufficient to convict, and that the court should so have instructed the jury. The testimony is not all returned in the record, but it appears sufficiently from what is returned that the respondent was not entitled to the instruction asked for in this respect. The other requests, not embraced in or fully covered by the charge of the court, were properly refused. The charge, as given, was impartial, and fully covered the law under the testimony disclosed in the record.

The errors assigned are overruled, and the judgment is affirmed.

SHERWOOD, C. J., MORSE and CAMPBELL, JJ., concurred. LONG, J., did not sit.