## HAGGERTY *v.* BALDWIN.

BANKS—CHECKS—PRESENTATION FOR PAYMENT—TIME.

Plaintiffs received defendant's check on a bank in a neighboring city by mail on Friday. Saturday they deposited it in their bank in such city. Monday morning such bank presented the check at the bank on which it was drawn for payment, which was refused, though the bank was still open and doing business. That afternoon the bank closed, and did not resume business. In an action to recover on the check, the court directed a verdict for plaintiffs. *Held*, not error.

Error to Wayne; Carpenter, J. Submitted April 10, 1902. (Docket No. 66.) Decided June 24, 1902.

*Assumpsit* by Lorenzo D. Haggerty and John S. Haggerty, copartners as Haggerty & Son, against Stephen Baldwin, to recover the amount of a check. From a judgment for plaintiffs on verdict directed by the court, defendant brings error. Affirmed.

*Hayes & Lawson*, for appellant.

*Lehmann Bros. & F. J. Riggs*, for appellees.

MOORE, J.   This case was tried by a jury.   At the conclusion of all the testimony the counsel for defendant requested the judge to direct a verdict for defendant.   A like request was made on the part of the plaintiffs.   The judge stated he thought a verdict ought to be directed in favor of one party or the other.   Counsel then agreed the judge might take the case under advisement, and, after reaching a conclusion, might direct a verdict as if the jury were present.   A verdict was directed in favor of plaintiffs.   The defendant has brought the case here by writ of error.

The defendant lives in the city of Detroit.   The plaintiffs live and do business in the township of Springwells, $2\frac{1}{2}$ miles west of the city limits of Detroit, though one of the plaintiffs has a home in the city of Detroit, where he spends part of his time; but he claims a residence and votes in Springwells, and the business of the firm is done in the township of Springwells.   The defendant was indebted to the plaintiffs, and on the 5th of September, 1900, he sent them, through the mails, a check on the bank of A. Ives & Son, bankers doing buisness in the city of Detroit, for $139.25.   Mr. Baldwin had done business with this bank for a good many years.   He had in the bank September 5th, $1,623.85.   He deposited $100, and gave checks that day for $913.85, $1,000, and $139.25.   The record discloses the plaintiffs received the check during the forenoon of September 7th.   They were not customers of A. Ives & Son, but did their banking with the Home Savings Bank, whose place of business is in the city of Detroit.   The check was deposited with the last-named bank by one of the members of the firm in the forenoon of September 8th, which was Saturday.   The banking hours on Saturday are from 9 a. m. to 12:30 p. m., and from 6 p. m. to 8 p. m.   No collections are made between 6 p. m. and 8 p. m.   The clearing house meets at 10 o'clock on

Saturdays, and checks deposited at 10 o'clock or after would wait the meeting of the clearing house on Monday before being presented. This check did not go through the clearing house, and at this time the Ives Bank was not a member of the clearing house. A messenger from the Home Savings Bank took this check, with others, and presented it to the paying teller of the Ives Bank Monday morning at about a quarter past 9 o'clock. It was not, paid, but was handed back to the messenger with the statement by the cashier that he would arrange it with the Home Savings Bank. The Ives Bank at this time was open and doing business. The Home Savings Bank again sent the check to the Ives Bank at half past 2 o'clock on the same afternoon, when the bank was closed, and never again resumed business. On the following day the cashier of the Home Savings Bank sent the check to the office of Mr. Baldwin. The messenger informed Mr. Baldwin the check was dishonored, and asked him for another one.

Mr. Butler Ives was sworn as a witness for Mr. Baldwin, and testified that between the 5th of September and the time of the failure of the bank Mr. Baldwin saw him and said—

"That he had drawn a few checks that would overdraw him a little. There was one check, he said, he had sent to Chicago, and it might come in before he could get the money in; and he asked me if we would take care of them, and I told him we would."

On cross-examination he testified:

"Q. Had you not for some days prior to the 10th refused to pay checks?

"A. No, sir; not for some days,—for a day or two.

"Q. A day or two before the 10th?

"A. No, sir; we paid checks on Saturday, and some on Monday. * * *

"Q. Did you pay all checks on Saturday?

"A. We paid all the checks excepting a few clearing-house checks.

"Q. Well, you did not pay them all on Saturday?

"A. No, sir. I don't remember the day I had the con-

versation with Mr. Baldwin with reference to the checks.

"*The Court:* What was the distinction between clearing-house checks and other checks ?

"*A*. We call 'clearing-house checks' the checks that come from the banks. ·* * *

"*The Court:* What arrangement was made Saturday respecting the checks that came to you through the clearing house?

"*A*. There was not any arrangements made. We were trying to make arrangements by Monday to go through the clearing house,—to have them taken care of; but there was so many came in we could not do it."

The situation, then, is that plaintiffs received the check through the mails on Friday. The following day they sent it by a member of the firm to their bank, which caused it to be presented early in the first secular day thereafter, when payment was refused, though the bank upon which the check was drawn was still open and doing business.

In *Freiberg* v. *Cody*, 55 Mich. 108 (20 N. W. 813), it is said :

"In cases where the parties to a check· are doing business in the same city where the bank is located, the time within which the holder should present the instrument for payment seems to be very well settled; but, in a case like the present, the presentation must be made within a reasonable time, taking all the circumstances in consideration, and when no more time is taken than is fairly required in the usual and ordinary course of business, special inconvenience and special circumstances considered, the holder, in case of failure of the bank upon which the check is drawn, before presentation, should not be held to suffer the loss. *Phœnix Ins. Co.* v. *Allen*, 11 Mich. 501 (83 Am. Dec. 756); *Nutting* v. *Burked*, 48 Mich. 241 (12 N. W. 184)."

In *Holmes* v. *Roe*, 62 Mich. 199 (28 N. W. 864, 4 Am. St. Rep. 844), it is said :

"The law is well settled that if the person who receives the check, and the banker on whom it is drawn, are in the same place, the check must, in the absence of special circumstances, be presented the same day, or at latest the

day after, it is received. *Simpson* v. *Insurance Co.*, 44 Cal. 139, *Cawein* v. *Browinski*, 6 Bush, 457 (99 Am. Dec. 684); *Schoolfield* v. *Moon*, 9 Heisk. 171; *Alexander* v. *Burchfield*, 7 Man. & G. (49 E. C. L ) 1061, *Boddington* v. *Schlencker*, 4 Barn. & Adol. 752, *Moule* v. *Brown*, 4 Bing. N. C. 268. If, however, the person who receives the check, and the banker on whom it is drawn, are in different places, in the absence of special circumstances the check must be forwarded for presentment on the day after it is received, at the latest; and the agent to whom it is forwarded must, in like manner, present it, at the latest, on the day after he receives it. *Hare* v. *Henty*, 30 Law J. C. P. 302; *Prideaux* v. *Criddle*, L. R. 4 Q. B. 455; *Griffin* v. *Kemp*, 46 Ind. 176; *Woodruff* v. *Plant*, 41 Conn. 344; *Burkhalter* v. *Bank*, 42 N. Y. 538; *Bond* v. *Warden*, 1 Colly. 583; *Firth* v. *Brooks*, 4 Law T. (N. S.) 467.

"Presentment within the time above stated is only necessary to charge the drawer when the banker has become insolvent or failed between the time when the check was received and the time it should have been presented.

"The rule of diligence does not require the presentment to be made at any particular period within the time limited by the law as a reasonable time. Consequently the payee or holder of the check does not lose his right to recover by the stoppage of the bank within the prescribed period, provided the check is presented, though subsequent to the stoppage, within the period. Grant, Banks, 57."

See, also, *Hamilton* v. *Lumber Co.*, 95 Mich. 436 (54 N. W. 903); *Lloyd* v. *Osborne*, 92 Wis. 93 (65 N. W. 859); 5 Am. & Eng. Enc. Law (2d Ed.), pp. 1041, 1042, and notes.

We think the judge did not err in directing a verdict in favor of the plaintiffs.

HOOKER, C. J., GRANT and MONTGOMERY, JJ., concurred. LONG, J., did not sit.