THE WEST BRANCH STATE BANK, Appellant, v. J. W. HAINES, Appellee.

Banks and banking: STATEMENTS OF OFFICER: LIABILITY OF BANK.
1  The statements of a bank director made at his home or on the street will not bind the corporation of which he is an officer; but if he gives the assurance in the name of the corporation and it is reported to and acted on or· acquiesced in by the corporation, it may be .shown in a controversy growing out of the transaction to which it relates.

Admission of evidence: GENERAL OBJECTION: PREJUDICE. In an action to recover on a note given in part consideration for a draft on a banking firm which failed before payment of the draft, evidence that the cashier of the issuing bank stated after the failure of the drawee that his bank had no funds therein was admissible over a general objection; but if erroneously admitted the introduction of evidence to the same effect by the issuing bank itself rendered the same without prejudice.

Bank drafts: LIABILITY OF DRAWER TO PAYEE: EVIDENCE. Presentment of a bank draft to the drawee for payment is not always an indispensable condition to the drawer's liability to the payee thereon; as where the drawer has no right to. expect or demand payment by the drawee. In the instant case the evidence is held to require a submission of the question of the drawee's obligation to pay the draft had it been presented.

Same: PRESENTMENT FOR PAYMENT: DELAY. The question of unreasonable delay in presenting a bank draft for payment depends largely upon circumstances, and may be governed by the mutual understanding by the parties of the purpose for which it is purchased; and is usually a question for the jury. In the instant case the circumstances are held to require submission of the issue to the jury.

*Appeal from Cedar District Court.*— HON. W. G. THOMPSON, Judge.

WEDNESDAY, JULY 3, 1907

ACTION at law to recover upon a promissory note. Judgment for defendant, and plaintiff appeals.— *Affirmed.*

*Baker & Ball* and *I. J. Hamiel,* for appellant.

*Remley & Remley, George Hoover,* and *J. J. Ney,* for appellee.

WEAVER, C. J.— The making and delivery of the note sued upon is admitted by the defendant, but he denies the plaintiff's right to recover thereon on the following grounds: He alleges that said note, with $200 in cash, was delivered by him to the plaintiff in payment or exchange for a draft or check drawn by the plaintiff on Gilman, Son & Co., of New York City, under the following circumstances: Defendant had entered into a contract for the purchase of land in the vicinity of Ortonville, Minn., and to avoid a forfeiture of such contract he was required to be ready to pay the sum of $2,600 thereon upon the 8th day of October, 1902, or as soon thereafter as the seller was able to present an abstract showing good title to the land. On the near approach of said date there was a prospect that the seller would be delayed for a time in making the proper showing of title, and defendant, as he alleges, was advised by the plaintiff bank and its officers that it was better, for the protection of his own interests, that he avoid any appearance of default on his part and have the amount of the agreed payment forwarded to Ortonville, ready to be delivered to the seller on the day named or as soon thereafter as the abstract of title should be perfected. To that end he says the said bank on October 7, 1902, issued to him a check or draft on Gilman, Son & Co., of New York City, for the sum of $2,600, in consideration of which he then and there paid said bank $200 in money and executed the note now in suit. Said draft or check, it is claimed, was issued by the bank with the express knowledge and understanding that its presentation for payment was likely to be delayed a few days because of the matters above related, and was promptly forwarded to Ortonville, where it was received on October 9, 1902. Seven days thereafter, and before the

sale and transfer of the land had been perfected, and before any presentation of said check or demand made for its payment, Gilman, Son & Co., being insolvent, made an assignment in bankruptcy.. It is further alleged that, when the insolvency and bankruptcy of said drawee was discovered, said check was presented to the plaintiff bank for payment, and payment thereof was refused, thus causing an entire failure of the consideration of the note in suit. It is further alleged that at and prior to the issuance of said check or draft the plaintiff bank knew that Gilman, Son & Co. were insolvent and liable to suspend payment at any time, but fraudulently concealed such fact and information from the defendant. The court having refused to set aside the verdict of the jury in defendant's favor, a reversal of the judgment is sought in this court upon grounds hereinafter considered.

I.   The defendant, as a witness in his own behalf, was allowed to testify that he talked with one of the directors of the bank with reference to the land contract and the probable delay in completing the transaction, and that said director, after advising him to have the money sent to Ortonville, added: "You go see Mr. Coggeshall [the cashier of the bank], and I think he will fix you out all right." The testimony being objected to, the court ruled that the bank would not be bound by the statement of a director other than the cashier, unless the same was communicated to and acted upon by the bank; and, subject to this ruling, the answer of the witness was allowed to stand. In this we discover no error. No one would contend that a statement made by a bank director at his home or on the street will bind the corporation of which he is an officer; but if he gives the assurance or promise in the name of the corporation, and it is reported to or acted upon or acquiesced in by the corporation or its authorized managers, we see no good reason why it is not provable in a controversy growing out of such transaction.

1. BANKS AND
   BANKING:
   statements of
   officer: liability
   of bank.

One Wickersham, postmaster at West Branch, a witness for the defense, testified that on receipt of the announcement of the failure of Gilman, Son & Co. he went to the bank and inquired whether it had been "caught" for a loss therein, and was told by the cashier in effect that the bank's account with that firm was slightly overdrawn and that no loss would ensue therefrom. While it may be doubtful whether the cashier had any authority to speak for the bank under such circumstances, the testimony was objected to on general grounds only, and there was no error in admitting it. Moreover, the plaintiff itself put in testimony the fact that according to its own books said account was overdrawn, substantially as the cashier is alleged to have stated, although, by reason of certain drafts charged therein being then still in transit and being thereafter dishonored, the actual balance was in plaintiff's favor to the extent of several thousand dollars. Such being the admitted state of facts, the admission of the evidence, if erroneous, was without prejudice to the plaintiff.

2. ADMISSION OF EVIDENCE: general objection: prejudice

Other exceptions have been preserved to rulings upon evidence, but none have been argued by counsel. We have examined the record, however, and find no prejudicial error in any of them.

II. It is next argued that the court should have directed a verdict for the plaintiff, and that in refusing to do so there was reversible error. This contention is grounded, first, upon the proposition that no presentment of the check or draft to Gilman, Son & Co. for payment has been shown; and, if such presentment is an indispensable condition of the drawer's liability to the payee, the point is well taken, for such proof is evidently lacking. By section 3060a79 of the Code Supplement of 1902 it is provided that presentment for payment is not required to charge the drawer, where he has no right to expect or require the drawee to pay

3. BANK DRAFTS: liability of drawer to payee: evidence.

the instrument. The appellee invokes the benefit of this provision. It is alleged, as we have seen, that appellant knew Gilman, Son & Co. to be in a failing condition when it sold the draft to appellee. In support of this claim there was evidence of admissions by the cashier to the effect that he had for some time been doubtful of the financial soundness of said firm; that the bank had suspected the stability of said firm, but had continued to use it as correspondent because of the habit or custom arising from a long business acquaintance; and that the bank guarded itself against great risk by keeping a small balance only in the hands of its correspondent. These admissions, some of which were shown to have been made prior to the date of this transaction, were testified to without objection by three or more different witnesses. It was shown, also, that, taking into account drafts in transit, the appellant's balance with its correspondent was frequently overdrawn, or reduced to a comparatively trifling sum, and that on October 13, 1902, the day on which appellant claims the demand for payment should have been made, its actual balance with said correspondent was insufficient to pay the draft in controversy. While this showing was not a strong one, yet we think it sufficient to carry the case to the jury upon the question whether, in view of all the facts, the managing officers of the bank in the issuance of said draft had any right as reasonable men to rely upon or expect Gilman, Son & Co. to honor said draft by payment, if presented within a reasonable time for that purpose.

But it is urged that, even conceding this to be correct, we should hold as a matter of law there was unreasonable delay to make such presentment before the failure of Gilman, Son & Co. was made public on October 16, 1902. According to the general tenor of the testimony a draft purchased and forwarded from West Branch to Ortonville, Minn., on October 7th, and forwarded thence without intermediate negotiation to New York, would ordinarily be presented to the drawee some-

4. Same: presentation for payment: delay.

where from October 12th to October 14th.   Taking the average of these dates, a delay of about three days had occurred when the correspondent closed its doors.   Now, while it is true that the court may sometimes determine the reasonableness or unreasonableness of delay in presentment of a negotiable instrument as a matter of law, the question is ordinarily one of fact.   As between the drawer and payee in this case, the question whether the delay was reasonable depends upon circumstances disclosed in evidence.   If the bank knew that appellee desired to send the draft to Ortonville, to be there held for a few days for the completion of the land purchase, and issued the paper to him for that purpose, then appellant can claim no advantage from the fact that it was not forwarded to New York for payment on the same or following day, provided, of course, that such delay was reasonably necessary for the accomplishment of the known purpose for which it was obtained.   Obviously this is a question for the jury to consider and pass upon, in view of all the proved facts and the ordinary course and methods of business.

Bank drafts or bills of exchange differ from ordinary bank checks, in that the latter usually contemplate practically immediate presentation for payment.   This is especially true when the check is drawn upon a bank in the town or city where both drawer and payee reside.   On the other hand, a bank draft, bill, or check upon a distant bank, used as a means of transmission of funds between different sections of the country, is more usually than otherwise negotiated, and passes through various hands, and serves the purpose of perhaps many persons before final presentment.   For instance, a resident of Iowa may send a New York draft to a creditor in San Francisco, and the latter may indorse it to his own creditor in Chicago, and the latter in turn indorse it to his creditor in New York, who indorses it to his local bank, which presents it to the drawee for payment.   Sent directly from the place of its issuance, such draft would have been

presented within from two to four days of its date; but by the circuitous route we have described its transmission requires ten days or more. Yet no one, we think, would contend for the proposition that a delay in presentment thus occasioned would work a discharge of the drawer. Of course, if any person to whom the bill is indorsed fails to promptly negotiate and pass it along on its course to final presentation, and loss follows, he alone must bear it, unless the delay has been occasioned with the express or implied consent of the drawer. If a person, being about to set out upon an extended visit to a distant State, and wishing to carry his funds in bank drafts to be negotiated from time to time as he may need the money, applies to his banker, who issues the desired paper, knowing the purpose for and the manner in which it is to be used, we think it unquestionable that the risk of loss by the insolvency of the drawee is not shifted from the drawer to the payee simply because the latter does not put the bills in immediate course of collection.

So in the case before us it is claimed by the appellee, and there is evidence tending to uphold his contention, that the appellant issued the draft to be sent by the former to Ortonville, knowing it was expected or liable to be there held temporarily for the completion of the transfer of the land which he was purchasing. The delay was not so great that we can say it was manifestly beyond the contemplation of the parties. Such being our view of the merits of the case, we have to say that the appellant's motions for a directed verdict were correctly overruled, and the cause was properly submitted to the jury. As bearing upon the case presented, see Story on Bills, sections 472–473; 1 Daniel, Neg. Insts. (5th Ed.) 466–469; 2 Daniel, Neg Insts. (5th Ed.) 1595a; *Montelius v. Charles*, 76 Ill. 305.

Most of the authorities cited to us by the appellant have direct reference to the measures which the payee of a bill must take in order to charge an indorser — rules which are not always equally applicable to the drawer. Other authori-

ties called to our attention are not inconsistent with the conclusion reached by us. We do not attempt to determine the weight or preponderance of the evidence. That was the province of the jury alone. The finding was adverse to the plaintiff, and we are not at liberty to set it aside.

The judgment of the district court is *affirmed*.