[No. 1912]

## ROBERTS, JOHNSON & RAND SHOE COMPANY (A Corporation), Appellant, *v.* H. A. McKIM, Respondent.

1. Principal and Agent—Authority of Agent.

    An agent intrusted with a claim for collection is, in the absence of express authority to that effect, without power to accept anything in payment but lawful money, and where he accepts checks in payment, the creditor is not bound thereby in the absence of a ratification.

2. Payment—Delivery of Checks—Evidence.

    An offer by a debtor to send a draft on a bank which had suspended payment in payment of his debt to the creditor was met with a draft drawn by the creditor on the debtor for the cash, and the draft was returned unpaid. Later, the creditor placed the claim in the hands of an agent for collection, without authority to receive checks. The debtor sent checks drawn on the bank to the agent. The creditor received the checks and credited the debtor with the amount thereof, subject to collection, and the checks were forwarded for collection, but returned unpaid, and immediately charged back to the debtor's account. *Held*, not to show payment by the debtor.

3. Payment—Burden of Proof.

    A debtor who seeks to establish a settlement of the account other than by a payment in cash has the burden of showing that fact.

4. Principal and Agent — Unauthorized Acts of Agent — Effect.

    A creditor placing his claim in the hands of an agent for collection is not bound by the acts or declarations of the agent except such as he authorized or subsequently ratified.

APPEAL from the District Court of the Fifth Judicial

District of the State of Nevada, in and for Nye County; *Mark R. Averill*, Judge.

Action by the Roberts, Johnson & Rand Shoe Company against H. A. McKim. From a judgment granting insufficient relief, plaintiff appeals. **Reversed and remanded.**

*McIntosh & Cooke*, for Appellant.

*James F. Dennis*, for Respondent.

By the Court, Norcross, J.:

Appellant instituted its action against respondent to recover the purchase price of certain bills of merchandise sold and delivered to respondent. The complaint was in two counts, the first alleging the sale of merchandise by plaintiff to defendant of the value of $153, and the record was upon an assigned claim in the sum of $190.20 for merchandise sold to appellant by the Joseph P. Dunn Shoe and Leather Company. Respondent, in his answer, confessed the second cause of action, and offered to allow judgment to be taken therefor, but alleged payment as a defense to the first cause of action. The issue was tried by a jury, and a verdict rendered in favor of the plaintiff for the amount of the second cause of action. From the judgment entered on the verdict and from an order denying plaintiff's motion for a new trial, an appeal is taken.

The record presents the sole question as to the sufficiency of the evidence to justify the court or jury in determining in favor of the defendant the issue of payment as to the first cause of action.

The record discloses that the respondent, a merchant in business at Tonopah, Nye County, purchased the two bills of merchandise during the year 1907. The appellant having demanded payment of its account, the defendant wrote a letter to plaintiff of date December 3, 1907, in which, among other things not material, he said: "Your favor of the 25th ult. to hand and contents noted. Note that you find my rating absolutely solvent, and I believe that I am, and a great deal more so than two of the old-

est and most popular banks here, and they control 8-10th
of the deposits of this town.    They suspended on the 23
Oct. and have tied up everybody's means to pay, and they
have not resumed yet, and do not expect to until after
Jan. 1st at least, and then, if they do, it will be on a basis
of a series of payments 1% in 3 months, 20% in 6 months,
25% in 9 mos. balance in a year, and they claim, and the
Bank Examiner reports them absolutely solvent also.    If
you wish a draft on either of those banks I will be pleased
to send you such in payment of my bill, otherwise, I must
confess that I cannot manufacture money to pay you."
No direct reply appears to have been made to this letter,
but upon the 13th day of December following, the plaintiff
forwarded a sight draft on defendant in favor of Sipple
Adjustment Company of St. Louis, for the amount in
question.    The draft was returned unpaid by the bank
to which it was sent for collection, with the memorandum
indorsed thereon, "Party has written direct."

Subsequently, the claim having been put in the hands
of the said Sipple Adjustment Company for collection,
the Sipple Adjustment Company wrote a letter to the
defendant of date December 24th, among other matters
not material, saying: "We note in your advertisement
that you mention 'have been accepting bank checks all
the time.' Now since you can't cash them, please send
enough to cover our client's claim and subject to later
collection, we will see that you are credited and not
bothered further on this matter.    Meantime, let us state
that Roberts-Johnson will be able to handle the checks
the same as cash, and thus relieve the situation with
them.    We want only what is fair and right, but do insist
and urge that you answer this letter immediately with
definite payment, for letter writing will not do any good."

To this letter, defendant replied as of date December
28th, as follows:  "Enclosed find five checks drawn on the
State Bank and Trust Co., Tonopah, Nevada, amounting
$153.30, and as you state in your letter of the 24th that
you will credit my account and thus settle the claim with-
out further bother on this matter.    They are all endorsed

payable to Roberts, Johnson, Rand Shoe Co.    I would be only too glad to pay off all my indebtedness with State Bank checks, as I have the checks to do it, and they are all representative of the cash deposited.    Those have been checked up to the accounts of parties who drew them, and, of course, are collectible; that is, the deposits are back of them.    We expect this bank to resume Jan. 2d, and it is now up to you to get your money.    Trusting that this will close the incident and awaiting receipted statement, I am yours truly, H. A. McKim."

On June 29, 1908, McIntosh & Cooke, attorneys for plaintiff, wrote to defendant as follows:  "In re Roberts, Johnson & Rand Shoe Company, vs. Yourself for $153. We are herewith enclosing to you checks as follows: * * * Being the same checks sent by you on proposed settlement of above claim, and rejected by client, for the reasons heretofore stated to you.    Clients agreed to accept these 'subject to later collection,' and as a reasonable time has elapsed and no favorable indications of bank reopening, the condition on which checks were received has not been realized.    You fully understand position which client takes and which we take, from the talk had in our office.    Clients would certainly not agree to take worthless paper in payment of their just claim, and we anticipate your having much difficulty in trying to make a court so believe."

Witnesses for the plaintiff testified that the Sipple Adjustment Company was never authorized to accept anything but cash in payment for its claim against the defendant, but were instructed to the contrary.    Clarence Wise, a witness for the plaintiff, whose deposition was taken, testified that he was "credit man" for the plaintiff company.    He testified that the checks in question on the State Bank and Trust Company were tendered to the plaintiff by the Sipple Adjustment Company, to be credited on the account when collected; that they were received by the plaintiff and a memorandum made on the ledger of credit; that no checks are received by the plaintiff except as a credit subject to collection; that the checks

were sent out for collection, returned unpaid, and were immediately charged back to the defendant's account.

There is nothing in the testimony of witnesses upon the part of the defendant bringing out facts in addition to that shown by the correspondence, *supra,* except that the parties whose checks on the State Bank and Trust Company were given to defendant and by him assigned to the plaintiff, had credits with said bank at the time of its suspension and at the time said checks were given, equaling or exceeding the several amounts for which they were drawn.

The law of this case was correctly stated to the jury in the following instruction: "The jury is instructed, as a matter of law, an attorney or collection agent intrusted with a claim by the owner thereof for the purpose of collecting the money due thereon has, in the absence of express authority from the owner of the claim to the contrary, no authority to accept or receive anything but cash, lawful money, in payment of such claim, and if the jury believe from the evidence in this case that the plaintiff placed its claim of $153 against the defendant upon its first count or cause of action with the Sipple Adjustment Company for the purpose of collection, then the jury are further instructed that said Sipple Adjustment Company had no authority, as a matter of law, to accept, or agree to accept, the checks in evidence in payment of plaintiff's claim against defendant, and plaintiff would not be bound by such agreement, if you find there was such agreement, unless you further find from the evidence that plaintiff expressly authorized said Sipple Adjustment Company to accept said checks in full and absolute payment before they were sent, or else after the checks were sent by defendant to said Sipple Adjustment Company, and after full knowledge of all the terms and conditions of the transaction, the plaintiff ratified and approved such arrangement made by said Sipple Adjustment Company, if you find there was such an arrangement. The jury is instructed that lawful money is the only legal tender or medium of exchange, and that in

this case in order for the defendant to recover you must first find from a preponderance of the evidence that there was an express agreement made and entered into between plaintiff and defendant whereby plaintiff agreed to accept the checks on the State Bank and Trust Company in lieu of one hundred and fifty-three dollars in money, as and for absolute payment of the claim set forth in plaintiff's first count or cause of action."

There is no conflict in the evidence in this case, from a reading of which it is manifest that the verdict was contrary, both to the evidence and the instructions. Not only is there no evidence that the Sipple Adjustment Company was authorized to accept for plaintiff from the defendant anything but cash or legal tender in discharge of defendant's indebtedness, but the evidence is positive to the contrary.

Defendant's offer to send a draft on the State Bank and Trust Company, in payment of his bill, was met with a draft on him for the cash. Later the claim was placed in the hands of the Sipple Adjustment Company for collection, and the checks were sent in pursuance of their letter to the effect that defendant would be credited with the face amount thereof "subject to later collection."

Where defendant sought to establish a settlement of the account other than by a payment in cash or legal tender, the burden of showing that fact was on him.

Plaintiff could not be bound by the acts or declarations of the adjustment company, except to the extent that those acts or declarations were authorized or subsequently ratified. The plaintiff received the checks and credited the defendant with the amount thereof subject to collection, as in the ordinary course of business transactions. They were forwarded for collection and returned unpaid and immediately charged back to the defendant's account. In view of the uncontradicted evidence in this case that no one was authorized to accept for the plaintiff anything but cash or legal tender in discharge of indebtedness due it, and that it only accepted the checks and entered on its ledger a memorandum of credit, subject to collection,

when the checks were returned unpaid, the account, as a matter of law, was in the same situation as though the checks had never been sent.   To hold otherwise would not only be contrary to well-settled principles of law, but would make a dangerous precedent in commercial and other business transactions in which the crediting of accounts on receipt of checks plays so important a part. Unfortunate as it may be for the individual who has money on deposit in a suspended or insolvent bank, he can only discharge his indebtedness with unpaid checks upon such a bank upon a clear showing that the one to whom he is indebted at the time accepts such check absolutely and unconditionally in discharge of the debt, and even then, to be binding, doubtless it would have to appear that the checks were of some value.

Judgment reversed and cause remanded for new trial.