## RICHARDSON GRAIN SEPARATOR COMPANY v. EAST HENNEPIN STATE BANK.[1]

October 10, 1919.

No. 21,317.

**Bank and banking — collection of out-of-town check.**

1. Defendant is an outlying bank in Minneapolis. Plaintiff deposited a Chicago check for collection. Defendant had no Chicago correspondent. Plaintiff knew it. Defendant forwarded the check to Chicago through a Mankato bank. When presented for payment the payee bank had closed its doors. Had it been presented a day earlier it would have been paid. It was customary for outlying Minneapolis banks without Chicago correspondents to forward Chicago checks for collection through central Minneapolis banks. Had this been done in the customary way no time would have been gained.

**Check to be forwarded within reasonable time — customary speed.**

2. A check is intended for payment, not for circulation. A collecting bank must forward out-of-town checks for collection within a reasonable time and by a reasonably direct route. The usual commercial route is sufficient. The customary speed of banks similarly situated is all the check holder may expect.

**No liability unless time is lost.**

3. No liability arises from forwarding a check from Minneapolis to Chicago through a bank in Mankato where no time is lost thereby.
[1]Reported in 174 N. W. 415.

**Conversation between parties immaterial.**

4. Plaintiff's president was an officer in defendant bank. A conversation between him and another officer of defendant, both acting as such, as to a proposed manner of handling Chicago checks, gives rise to neither contract, representation, nor estoppel, so far as plaintiff is concerned.

Action in the district court for Hennepin county to recover $688.83 for negligence in collecting the amount of a check. The answer alleged that defendant forwarded the check in the usual course of business to the city of Chicago through its correspondent and in so doing exercised ordinary care and diligence, and that the failure of the bank in Chicago upon which said check was drawn to pay the same did not occur through any fault or negligence on the part of defendant; quoted the condition printed on plaintiff's deposit book to the effect that defendant bank in receiving collections acts only as the agent of the depositor and does not assume any responsibility beyond due diligence on its part. The answer further alleged that the officer of plaintiff who mailed the check to defendant was a vice president of defendant bank at the very time of doing so, and was familiar with the manner in which defendant sent checks and drafts to Chicago for collection. The reply alleged that the vice president was not a practical banker and did not assume any part in the management of the bank and had no knowledge of the method of defendant in forwarding its checks to Chicago for collection. The case was tried before Rockwood, J., who made findings and ordered the action dismissed with prejudice. From an order denying its motion for amended findings, conclusions of law and order for judgment, or for a new trial, plaintiff appealed. Affirmed.

*Charles F. Keyes,* for appellant.
*John N. Berg,* for respondent.

**HALLAM, J.**

This action is brought against defendant bank to recover damages for delay in presentment of a check for payment. The court found that defendant exercised due diligence in handling the check and gave judg-

ment for defendant. The question on this appeal is, does the evidence, sustain this finding.

1. The check was drawn by a Chicago firm on a Chicago bank and in favor of plaintiff, a Minneapolis corporation. Plaintiff received the check at Minneapolis by mail June 25, 1917. The same day plaintiff mailed the check to defendant, a small "outlying bank" in Minneapolis, as the court found, for "collection and credit." Defendant received it on the morning of the twenty-sixth. Defendant "undertook its collection" and on the same day mailed it to the First National Bank of Mankato for collection. It arrived there June 27. The same day the Mankato bank mailed it to the First National Bank of Chicago for collection. That bank received it June 28 and presented it for payment June 29. At an earlier hour on that day the drawee bank closed its doors. The drawer of the check had funds in the bank, and had the check been presented a day earlier it would have been paid.

Had defendant had a Chicago correspondent, it might have forwarded the check direct to Chicago on June 26 and thus saved a day. But it did not have a Chicago correspondent. Plaintiff knew that fact. Mr. Thorbus, plaintiff's president and sole manager, was also vice president and a director of defendant bank, and had been its president. The usual method of collecting Chicago checks, by a Minneapolis bank without a Chicago correspondent, was through the medium of a bank that had a Chicago correspondent. The Mankato bank was such a bank. There were a number of such banks in Minneapolis. The Northwestern National was one such. Defendant "cleared" its local checks through this bank. Had it sent this check by special messenger to the Northwestern National before three p. m., June 26, the check would have been forwarded to Chicago on that day and a day saved. But there is evidence that it was not usual banking custom to do this. The usual custom, when an outlying bank in Minneapolis desired to employ a central bank to collect out-of-town checks, was to transmit them to the central bank by messenger on the morning of the day following their receipt. It is apparent therefore that if this check had been handled through the Northwestern National Bank of Minneapolis, and in the usual way of handling checks through central Minneapolis banks, it would not have arrived in Chicago any earlier than it in fact did.

2. The Negotiable Instruments Act does not help us. It prescribes the duty of the holder of a check, G. S. 1913, §§ 5998, 6005, but not the duty of a collecting bank. The rules applicable in the two cases are not necessarily the same. Morse, Banking, § 238.

A check is intended for payment and not for general circulation. Gifford v. Hardell, 88 Wis. 538, 60 N. W. 1064, 43 Am. St. 925; Parker v. Reddick, 65 Miss. 242, 3 South. 575, 7 Am. St. 646; Fegley v. McDonald, 89 Pa. 128; Gordon v. Levine, 194 Mass. 418, 80 N. E. 505, 10 L.R.A.(N.S.) 1153, 120 Am. St. 565, 10 Ann. Cas. 1119. When a bank receives a check for collection it must use due diligence in presenting it for payment. If drawn on a bank in another city it must forward it for collection within a reasonable time. Some authorities state that to present or forward it for presentment on the day following its receipt is, as a matter of law, due diligence. Morse, Banking, § 238; Martin v. Home Bank, 30 App. Div. 498, 52 N. Y. Supp. 464. This rule has the virtue of certainty, but we doubt the advisability of adopting this arbitrary standard. Whether this is due diligence is a question of fact rather than of law. It appears to be the practice of the Minnesota banks here concerned, in forwarding out-of-town checks by mail, to forward them on the same day they are received. See also Morse, Banking, § 242.

When a bank receives an out-of-town check for collection, it must forward it for presentment by a reasonably direct and not a circuitous route. See 8 C. J. 543; Gregg & Co. v. Beane, 69 Vt. 22, 37 Atl. 248; First Nat. Bank v. Miller, 43 Neb. 791, 62 N. W. 195. The usual commercial route is sufficient. Sublette Exchange Bank v. Fitzgerald, 168 Ill. App. 240. When the holder of a check utilizes the agency of a bank to make his collections, he may expect the customary speed of banks and no more, see Plover Savings Bank v. Moodie, 135 Iowa, 685, 110 N. W. 29, 113 N. W. 476, and when he employs, for the purpose of collecting a Chicago check, an outlying bank known by him to have no Chicago correspondent, he has a right to expect only the customary speed of banks similarly situated.

3. Complaint is made that this check was forwarded by a circuitous route. If time had been lost by the relaying of this check through Mankato we should hesitate to hold that such conduct was due diligence.

But as above indicated no time was lost by this method. The use of an improper method entails no liability if no damage is done. First Nat. Bank v. Buckhannon Bank, 80 Md. 475, 31 Atl. 302, 27 L.R.A. 332.

4. Plaintiff relies somewhat on a conversation alleged to have taken place before the organization of defendant bank between Mr. Thorbus who was then its prospective president and Mr. Preus, its prospective vice president, in which the desirability of a Chicago account was discussed and in which Mr. Preus is alleged to have said that it was not necessary to have a Chicago correspondent to collect Chicago checks, but that such checks could be "shot over" to a central Minneapolis Bank and gotten into Chicago just as quickly as though sent to a correspondent bank in Chicago. We do not attach as much importance to this conversation as does plaintiff. There is no suggestion that in this conversation Mr. Thorbus was in any sense acting for plaintiff. As a prospective officer of the bank he was discussing with a prospective fellow officer matters of policy in connection with the management of the bank. There was neither contract, representation, nor estoppel, as far as plaintiff was concerned.

The method employed by the bank was found by the court to be reasonable. We think this finding is sustained. In the absence of special arrangement the use of this method was sufficient. No special arrangement was made.

Order affirmed.