Argued April 11; reversed and remanded November 5, 1929

## JOPPA v. CLARK COMMISSION CO., INC., ET AL.

(281 P. 834)

*V. D. Dusenbery* of Portland (Crum, Murdoch & Dusenbery, of Portland, on the brief) for appellant.

*Frank S. Senn* of Portland (Senn & Recken and Beckman & McMenamin, all of Portland, on the brief) for respondents.

BEAN, J. It appears from the record that L. P. Joppa, plaintiff, is a farmer residing near Edgar, in the state of Montana; that the shipment of hogs sold by the defendant on commission was a neighborhood shipment and comprised hogs belonging to plaintiff and three of his neighbors; that after the sale of the hogs plaintiff and C. C. Clark, president of the Clark Commission company, went to the latter's office and plaintiff was given a check for $20, especially indorsed by Clark Commission company for expense money, as plaintiff was a stranger in the city. It is also undisputed that the check for the balance of the $3,500.97 was received through the mail by the cashier of Edgar State Bank at Edgar, Montana, inclosed in an envelope of the commission company's stamp and addressed to Edgar State bank by the commission company.

The plaintiff's testimony is to the effect that he requested the defendant to give him $20 "and send the rest to Edgar State bank at Edgar, Montana." And that plaintiff never saw the larger check until he returned to Montana on the evening of November 26, 1926, and went to the Edgar State bank on the morning of November 27, 1926; that he then indorsed the check and the amount thereof was deposited to his credit in the Edgar State bank.

Mr. C. C. Clark, president of Clark Commission company, testified, in substance, that both checks were made out and delivered to plaintiff at the same time and that the envelope was stamped and addressed to Edgar State bank and delivered to the plaintiff at the latter's request.

After the check in question was deposited in the Edgar State bank by plaintiff that bank immediately sent same, as claimed on behalf of the plaintiff, through the usual banking channels for collection and was presented to the Bank of Kenton on December 3, 1926, but payment was refused. The Bank of Kenton failed to open after the close of business on December 2, 1926.

Plaintiff's first assignment of error is that the court erred in modifying plaintiff's requested instruction (No. 2) by adding thereto the words "unless you also find from the evidence that the plaintiff accepted the check as payment," and in instructing the jury as follows:

"You are also instructed it is the law of this state that a check must be presented for payment within a reasonable time after its execution for the drawer or the maker of the check will be discharged from liability thereon to the extent of the loss caused by the delay and in determining what is a reasonable time, regard is to be had to the nature of the instrument, the usage of trade or business, if any, with respect to the instrument and the facts of the particular case, and if you believe from the evidence in this case that the check for $3,500.97 was presented for payment within reasonable time after it was received by the plaintiff, your verdict should be for the plaintiff, as I said before, for the sum of $3,500.97 with interest thereon at 6 per cent per annum from and after the 24th day of November, 1926, unless you also find from the evidence that the plaintiff accepted the check as payment."

█ We find no substantial evidence in the record that the check in question was accepted by plaintiff as payment or requiring that issue to be submitted to the jury. Neither the testimony on behalf of defendant nor the circumstances attending the transaction indicate such an agreement, or to overcome the prima facie presumption that the check was taken merely as con-

ditional, not absolute, payment. *Matlock v. Scheureman,* 51 Or. 49 (93 P. 823, 17 L. R. A. (N. S.) 747).

■ A promissory note or check given for an antecedent debt does not discharge the obligation in the absence of an agreement, express or implied, between the parties that it shall be given and accepted as payment. 21 R. C. L., p. 60; *Black v. Sippy,* 15 Or. 574 (16 P. 418) ; *Riner v. Southwestern Surety Ins. Co.,* 85 Or. 293 (165 P. 684, 166 P. 952) ; *Clarke-Woodward Drug Co. v. Hot Lake Sanitorium,* 75 Or. 234 (146 P. 135) ; *Cranston v. West Coast Life Ins. Co.,* 63 Or. 427 (128 P. 427).

■ When a debtor gives his check for the amount of his indebtedness the prima facie presumption arises that the check is taken merely as conditional, not absolute, payment. *Matlock v. Scheureman,* 51 Or. 49 (93 P. 823, 17 L. R. A. (N. S.) 747) ; *Eggleston v. Plowman,* 49 S. D. 609 (207 N. W. 981, 44 A. L. R. 1231) ; *Groomer v. McMillan,* 143 Mo. App. 612 (128 S. W. 285).

■ The mutual intention of the parties that a check shall be given and received as payment may be established by proof either of an express contract or a contract implied in fact, but in either case it must be proved by clear and satisfactory evidence. *Riner v. Southwestern Surety Co.,* 85 Or. 293 (165 P. 684) ; *Roberts, Johnson & Rand Shoe Co. v. McKimm,* 34 Nev. 191 (117 P. 13, at page 15) ; *Leschen & Sons Rope Co. v. Mayflower G. M. & R. Co.,* 173 Fed. 855 (97 C. C. A. 465, 35 L. R. A. (N. S.) 1) ; *Groomer v. McMillan,* 143 Mo. App. 612 (128 S. W. 285) ; *Hunter v. Henry,* (Mo. App.) 181 S. W. 597 ; *Smith v. Mills,* 112 Or. 496 (230 P. 350).

The instruction given correctly states the law applicable to the case without the modification referred to.

A second assignment is the court erred in giving the following instruction:

"Now in connection with the rule of law that it is necessary for the party to whom a check is delivered to present it within a reasonable time, you are also instructed that it is the law of this state that when a check is given to a person in the city where the bank upon which it is drawn is located, that the check must be presented to this bank the next day for payment—in other words, the law of this state says, that where a check is delivered to a party in the same place or city where the bank on which it is drawn is located, that the following day is a reasonable time within which to present it for payment; and if it is not done and the bank fails afterwards, the man who gave the check is no longer liable. So that in this case if you find on November 24, 1926, the Clark Commission Company made out and delivered to the plaintiff, Mr. Joppa, the check in question, then the plaintiff can not recover in this case, because under such conditions the check should have been presented some time during the following day, or November 25, 1926.

"You are also instructed that if you find Mr. Joppa himself sent the check to Montana, or if you find that after the check was made out and delivered to Mr. Joppa, he ordered it sent to Edgar, Montana, then I instruct you that the plaintiff can not recover in this case and your verdict should be for the defendant."

■■ A check is not designed for circulation as a medium of exchange and should be presented for payment with the dispatch and diligence consistent with the circumstances of the case and the transaction of other commercial business. The holder of a check is bound to use diligence in obtaining the money and must present it and demand payment within a reasonable time. (5 R. C. L., p. 506, § 30.)

■ The rule that a check when delivered at the place where the bank is situated, must be presented not later

than the close of the next business day, is subject to the qualification that it may be rendered inapplicable by the facts and circumstances of the particular case. Section 7978, Or. L., declares the law under the Negotiable Instruments Act in this state as follows:

"A check must be presented for payment within a reasonable time after its issue, or the drawer will be discharged from liability thereon to the extent of the loss caused by the delay."

In determining what is a reasonable time in presenting a check for payment, regard is to be had to the nature of the instrument, the usage of trade or business, if any, and the facts of the particular case. § 7982, Or. L.; 8 C. J. 539, § 752; *Empire-Arizona Copper Co. v. Shaw,* 20 Ariz. 471 (181 P. 464, 4 A. L. R. 1229); *Sinclair Refining Co. v. Keith,* 97 Okl. 55 (221 P. 1003); *Babcock v. City of Rocky Ford,* 25 Colo. App. 312 (137 P. 899); *Peterson v. School District No. 14,* 162 Minn. 357 (203 N. W. 46); *Anderson v. First National Bank,* 144 Iowa 251 (122 N. W. 918, 138 Am. St. Rep. 288); *Merritt v. Jackson,* 181 Mass. 69 (62 N. E. 987); *Commercial Nat. Bank v. Zimmerman,* 185 N. Y. 210 (77 N. E. 1020).

The announcement in the case of *Matlock v. Scheureman,* supra, as shown at page 55 of the report, made by Commissioner KING, and apparently relied upon by defendants, is as follows:

"As between the drawer and payee, the rule is that, when the payee to whom the check is delivered receives it in the same place where the bank upon which it is drawn is located, he may preserve recourse against the drawer by presenting it for payment at any time before the close of banking hours on the next day. (2 Daniel, Neg. Inst. (5th Ed.), § 1590.)

This was a correct statement of the law as applied to the facts in that case. It does not take into consideration the direction for determining what is a reasonable time or an unreasonable time, as provided in § 7982, Or. L. Or in other words, it does not say, under all the circumstances, a check must be presented on the day following its receipt when the payee, who receives the check and the drawer thereof are at the time in the same place where the drawee, bank, is located.

In *Colwell v. Colwell*, 92 Or. 103, 105 (179 P. 916, 4 A. L. R. 876), this court had under consideration the question of fixing the time from which the statute of limitations would run. The check was about nine years old at the time the action thereon was commenced and there was a leeway of about three years. Based upon the rule stated in 2 Daniel on Neg. Inst. (5th Ed.), § 1090, and not upon the Negotiable Instruments Law, the time the statute commenced to run was fixed the next day after the check in suit was delivered. The case is not in point.

The first part of the last instruction quoted seems to leave out of consideration in determining what is a reasonable time for the presentation of the check, "the facts of the particular case" and the usage of trade or business.

The charge to the jury that if the plaintiff himself sent the check to Montana, or if they found that the check was made out and delivered to Mr. Joppa, and he ordered it sent to Edgar, Montana, the plaintiff could not recover in this case, was tantamount to an instructed verdict in favor of defendants.

There is testimony introduced upon the trial tending to show that Joppa requested the commission company to send the balance of the funds, excepting the

$20, to the Edgar State bank at Edgar, Montana, and that the commission company, by Mr. Clark, assented to such an arrangement. This is indicated by the circumstances of the transaction, especially the fact that the commission company directed and stamped an envelope in which to send the check to the Edgar bank.

■ If Mr. Clark, manager of the commission company, assented to sending the check to the bank at Edgar, Montana, it would not seem material whether the check was mailed by Mr. Joppa or by the commission company. The assent to the arrangement, if any, was the main thing. If the commission company did assent to sending the check to the bank at Edgar, Montana, it would imply that the check should be presented for payment within a reasonable time in the usual and ordinary course of business.

■ It is contended on behalf of the defendants that as the check was deposited in the Edgar State bank and credited on the books to Joppa, and Joppa was permitted to check against a portion of the proceeds, that the transaction constituted a payment of the check to Joppa and that the Edgar State bank was thereafter the owner of the check. We quote:

"Checks deposited and credited as cash do not become the property of the bank, so that it takes the risk upon itself even though the depositor has been allowed to check against the deposit before the paper is collected, * * *. When a depositor deposits a check on another bank without any special contract, the property remains in him, and the bank is his agent until it has notice that the correspondent bank has received the money and credited it. * * * It is said that indorsement of the check to the bank, and credit on the books of the bank and on the passbook, are evidence of a contract by which the bank shall become owner of the

paper; but (1) *banks always claim and exercise the right of charging to the depositor all such checks returned unpaid, which is not consistent with the theory of an understanding that title passes absolutely.* (2) The practice of allowing depositors to check against such paper is reckoned by the ablest text-writers as a mere gratuitous privilege (referring to Morse (2d Ed.) p. 27). This decision is approved in New Jersey. (2 Morse on Banks (6th Ed.), § 586.)''

This section was quoted and approved in *Morris-Miller Co. v. Von Pressentin,* 63 Wash. 74 (114 P. 912, at page 914). See also *Security Sav., etc., Co. v. King,* 69 Or. 228 (138 P. 465).

The fact that the Edgar State bank at Edgar, Montana, credited to the plaintiff, Joppa, as cash, the check he left for collection did not render that bank liable to the plaintiff for the amount of the check, or make that bank the owner of the paper inasmuch as the check was subsequently dishonored. *Security Sav. & Trust Co. v. King,* supra, at page 233, where the question of such credit and the charging back of a check where withdrawals have been made upon the strength of the deposit is thoroughly discussed by Mr. Justice McNary, citing among other authorities *Winchester Milling Co. v. Bank,* 120 Tenn. 225 (111 S. W. 248, 18 L. R. A. (N. S.) 441), 2 Michie, Banks and Banking, § 163.

We think that under the negotiable instruments law the determination of what was a reasonable time for the presentation of the check in question for payment, having regard to the nature of the instrument, the manner in which it was forwarded through the banks from Edgar, Montana, being mailed on the 27th day of November, 1926, and having arrived for presentation to the bank in Portland on December 3d, following, under the testimony and all the circumstances

of the case, considering the usage of trade or business, if any, was a question to be presented to the jury. (§ 7982, Or. L.)

█ Where there is a conflict in the evidence, as there was in this case, as to a portion of the transaction, or where facts and circumstances are shown from which the inference might reasonably be drawn, that the drawer assented to the delay, the question of what is a reasonable time within which to present a check for payment is usually one of fact for the jury under proper instructions from the court. 8 C. J., p. 1069; *Colwell v. Colwell*, supra; *Sheffield v. Cleland*, 19 Idaho 612 (115 P. 20).

The jury must have understood from the charge of the court that if the check was delivered to the plaintiff in Portland he could not recover even though the defendant consented to the sending of the check to Edgar, Montana, or even though the defendant sent the check to that place.

We think that the charge to the jury withdrew from their consideration facts and circumstances tending to show that the drawer not only consented to sending the check to Edgar, Montana, for collection through the Edgar State bank, but also cooperated in sending the check for that purpose and that the instruction was erroneous and prejudicial.

The general rule that a check delivered at the place where the bank was situated must be presented not later than during the course of the next business day, has always yielded to special circumstances. 8 C. J., § 753; 5 R. C. L. 509.

The special circumstances in the present case are, as claimed by plaintiff in his testimony, the circumstances and understanding attending the matter of

mailing the check to Edgar State bank at Edgar, Montana, and the assent of the commission company to such arrangement, the situation of the parties and the bank to which the check was sent, together with all the other facts in the case, among which was the drawing by the commission company of two separate checks for the amount due Joppa of which the small one was intended to be cashed in Portland, Oregon, indicating that the larger one was not to be so handled.

Mr. Clark of the commission company had reason to believe, or knew, that Mr. Joppa was a farmer residing near the small town of Edgar, Montana, which had only one bank and that such a bank would not be likely to have a correspondent in Portland, Oregon, to which it could send the check. Mr. Clark indicated no objection in any way to the check being sent to Montana, and collected by the usual banking process.

In *Holmes v. Roe,* 62 Mich. 199 (28 N. W. 864, 4 Am. St. Rep. 844), at page 866 of the report, it is stated:

"Nothing is plainer than that the time may be extended by the assent of the drawer, express or implied. If the plaintiff's version of the affair is the true one, there was an implied assent to an extension of time; for if the defendant assented to plaintiff's taking the check home with him to Chelsea, he assented to its being forwarded from that place in the ordinary mode, which would bring it within the second principle above stated, and plaintiff would have had the whole of Tuesday in which to present the check."

In *West Branch State Bank v. Haines,* 135 Iowa 313 (112 N. W. 552), the court said:

"Now, while it is true that the court may sometimes determine the reasonableness or unreasonableness of delay in presentment of a negotiable instrument as a matter of law, the question is ordinarily one of fact. As between the drawer and payee in this case,

the question whether the delay was reasonable depends upon circumstances disclosed in evidence. If the bank knew that appellee desired to send the draft to Ortonville, to be there held for a few days for the completion of the land purchase, and issued the paper to him for that purpose, then appellant can claim no advantage from the fact that it was not forwarded to New York for payment on the same or following day, provided, of course, that such delay was reasonably necessary for the accomplishment of the known purpose for which it was obtained.''

The negotiable instruments law adopted in this state has superseded the law merchant. Instead of enacting that in the absence of special circumstances a check when delivered at the place where the bank is situated must be presented not later than the close of the next business day, § 7978, Or. L., directs that a check must be presented for payment within a reasonable time after its issue or the drawer will be discharged from liability thereon to the extent of the loss caused by the delay. And § 7982, Or. L., correctly points out how the ''reasonable time'' is to be ascertained.

It is stated in the note to *Holmes & Sons v. Briggs and Drum,* 17 Am. St. Rep. 804, at page 808, as follows:

''What is such reasonable time in which to present the check for payment generally depends upon the circumstances of the case and the relations which exist between the parties: (*Taylor v. Sip,* 30 N. J. L. 284.) It may be extended by the assent of the drawer, express or implied: (*Woodruff v. Plant,* 41 Conn. 344; *Holmes v. Roe,* 62 Mich. 199, 4 Am. St. Rep. 844.) It becomes a question of law for the court where there is no dispute about the facts: (*Mohawk Bank v. Broderick,* 10 Wend. 304; 13 Wend. 133; 27 Am. Dec. 192; *Himmelman v. Hotaling,* 40 Cal. 111; 6 Am. Rep. 600; *Cawein v. Browniski,* 6 Bush. 457; 99 Am. Dec. 684.)''

It is contended by plaintiff that the rule established by recent authorities seems to be that, under the negotiable instruments law, in order for a check to be presented for payment within a "reasonable time" it is not necessary that it be sent direct to the place of payment but collection through the usual banking channels is permissible, provided that the route be not unreasonably circuitous.

■ It is stated in 8 C. J., 542, 543, § 754, that "the check, if drawn on a distant place, however, need not be sent direct to its place of payment by the holder, but the usual and accustomed channel of transmission is all that is required." See also: *Spokane Valley St. Bank v. Lutes,* 133 Wash. 66 (233 P. 308); *Jensen v. Laurel Meat Co.,* 71 Mont. 582 (230 P. 1081); *Plover Savings Bank v. Moodie,* 135 Iowa 685 (113 N. W. 476); *Sublette Exch. Bank v. Fitzgerald,* 168 Ill. App. 240, 242; *Richardson Grain Separator Co. v. East Hennepin St. Bank,* 143 Minn. 420 (174 N. W. 415).

■ It is contended by defendants that this money belonged to Mr. Joppa, the appellant, and the agent, having exercised ordinary care in placing it in a going and duly organized banking institution, was not liable because of the insolvency of the bank. To this contention we can not accede. The question in the case goes further than this. We think the commission company, by depositing the proceeds of the sale of the hogs to its own credit, created a liability therefor of the bank to itself, and thus placed the money beyond the control of Joppa. 25 C. J. 373 & Note; *Akin v. Bedford,* 5 Mart. (N. S.) (La.) 502.

■ The commission company was not obliged to deposit the funds in the bank and draw a check therefor in favor of plaintiff, but having done so in the usual

course of business, questions in regard to the check are governed by the usual rules of law. The Packers' Act does not relieve the commission company from liability. It was required to pay the money to plaintiff and had given a bond that it would do so. That act was passed for the protection of shippers.

The commission company could have paid the money direct to plaintiff if it had seen fit to do so. Joppa was a stranger in Portland and had nothing to do with the selection of the bank in which the deposit was made. This court should not hold that as a matter of law the check in question was not presented within a reasonable time. That question should be presented to a jury under proper instructions of the court.

The judgment of the trial court is reversed and the cause remanded for a new trial.

Coshow, C. J., Brown and Belt, JJ., concur.