Argued January 21; reversed February 24; rehearing denied
April 19; second petition for rehearing denied June 7, 1932

## LOLAND *v.* NELSON ET AL.

(8 P. (2d) 82)

*Richard Sleight,* of Portland (Roy K. Terry, of Portland, on the brief), for appellants.

*R. C. Bradshaw,* of Portland (Joseph, Haney & Veatch, of Portland, on the brief), for respondent Loland.

*Bowerman & Kavanaugh,* of Portland, for respondent Schramm.

KELLY, J. The basis of plaintiff's claim for the relief sought herein is an alleged mistake. Plaintiff held a mortgage upon certain real property owned by defendants Jenning, which mortgage was executed to secure the payment of a note in the principal sum of $2,000. Messrs. Joseph, Haney and Littlefield, of Portland, were the representatives of plaintiff and on November 29, 1926, as such representatives, accepted a check drawn by the defendant J. D. Jenning in said sum of $2,000 upon the Bank of Kenton, which bank was then doing a banking business in Portland. At the time said check was delivered to them, plaintiff's said representatives delivered to said defendants Jenning the said note and mortgage, an abstract of the title to the mortgaged premises, and an insurance policy, covering the residence thereon, and agreed to, and did file a release of said mortgage with the county clerk of Multnomah county, Oregon, which release was there-

after delivered to said defendants. On the 29th day of November, 1926, said representatives of plaintiff endorsed and deposited said check with the Northwestern National Bank of Portland. The Northwestern National Bank endorsed said check and transmitted same to the Portland branch of the Federal Reserve Bank in Portland, Oregon, with directions to collect and remit the proceeds. The Federal Reserve Bank, Portland branch, transmitted said check with others to the Bank of Kenton for payment. On December 1, 1926, said Bank of Kenton received said checks from the Federal Reserve Bank, charged the amount of the check in suit against the account of J. D. Jenning, and stamped the said check "Paid." When the check in suit was drawn and at all other times involved herein, said defendant J. D. Jenning had a deposit with said Bank of Kenton in excess of $2,000. The said Bank of Kenton transmitted to the Portland branch of the Federal Reserve Bank a draft upon the Bank of California in the aggregate sum of the checks mentioned, namely, $19,809.67, which draft was thereafter dishonored. On the 3d day of December, 1926, the Bank of Kenton failed to open and the Superintendent of Banks took charge thereof.

The mistake, alleged in plaintiff's amended complaint, is that defendants Jenning represented to plaintiff that said check was a good and valid check and when presented to said bank the same would be paid; that plaintiff, relying upon said representations and believing that said check would be honored and paid when presented to the said bank, executed and delivered said release of mortgage; and, that, before plaintiff could present said check to the said Bank of Kenton for payment, the said bank closed its doors for business.

The testimony not only wholly fails to support plaintiff's allegation, to the effect that the Bank of Kenton failed before plaintiff could present said check; but, instead, it affirmatively discloses that the Bank of Kenton actually received the check while said bank had on hand $13,276.17, was still open and transacting business, and actually charged the amount of said check against Mr. Jenning's account.

■ ■ The only representations appearing in the record to the effect that said check would be paid are those which are implied by law. The maker of a check, in uttering it, impliedly represents that it will be paid upon demand, if presented within the time prescribed by law. While the statute declares that a check must be presented within a reasonable time after its issue (Section 57-1003, Oregon Code 1930), it is the general rule that where, as in the case at bar, the drawee and the payee are in the same place, a check to be presented in a reasonable time should be presented at some time before the close of banking hours on the day after the day on which it is received by the payee: *Matlock v. Scheuerman,* 51 Or. 49 (93 P. 823, 17 L. R. A. (N. S.) 747); *Gordon v. Levine,* 194 Mass. 418, (80 N. E. 505, 10 L. R. A. (N. S.) 1153, 120 Am. St. Rep. 565); 10 Ann Cas. 1119, and note at page 1121, and cases there cited. No circumstances appear of record herein which tend to justify a modification of this general rule.

■ When the check was issued, the Bank of Kenton was a going concern. On the 30th day of November, 1926, it was still open and transacting business. From the records before us, we can come to no other conclusion than that, if the check in suit had been presented to the Bank of Kenton, either upon the day of its issuance, November 29, 1926, or upon the following day, November 30, 1926, it would have been paid.

It. follows that defendants Jenning must prevail upon the question of whether at the time the check in suit was issued there were funds on deposit to the credit of Mr. Jenning sufficient to pay it, and likewise with respect to the question of whether the check would have been paid if it had been presented for payment within the time provided by law.

This being so, and it affirmatively appearing that said check was actually presented to said bank before it closed its doors, we are constrained to hold that no element of mistake, upon which plaintiff's case rests, has been established.

■ The acceptance by the Federal Reserve Bank, Portland branch, of a draft upon the Bank of California, instead of demanding and collecting the money due on said check, was in no sense the act of defendants Jenning, nor should they be chargeable therewith.

■ During the trial in the circuit court, counsel for defendants Jenning addressed the court thus:

"If the court please, we have worked out a mode of operation here by agreement, which is substantially this: We will put on one witness on behalf of the defendant out of order, and show what happened with this particular check; then we will develop, and I think the evidence already develops that there was no negligence on the part of Joseph, Haney & Littlefield. They put the check in the Northwestern Bank promptly. There may be some question as to whether or not the Northwestern Bank was negligent; but, in any event, the parties now before the court are all innocent."

Later, while conferring with the court and opposing counsel with reference to the advisability of a continuance for the purpose of making the Northwestern National Bank and the Superintendent of Banks parties

defendant, counsel for defendants Jenning said, concerning insurance upon the mortgage property:

"It is in force until it has been paid. It has not been paid, and it is the fault of either the Northwestern or the bank superintendent we don't know which."

Plaintiff cites the case of *Rorvik v. Astoria Box & Paper Co.,* 136 Or. 381 (299 P. 333), to the effect that a deliberate statement by an attorney of one of the parties is binding upon the client. In the case cited, there was a statement by counsel for defendants that plaintiff was entitled to a verdict in the sum of $5,000. The amount of the recovery, whether it should be $5,000, or more, then became the only issue for the jury. In the case at bar, there is no admission that there was a mutual mistake, as alleged in the amended complaint, or that the plaintiff did not have an opportunity to present the check to the Bank of Kenton before the bank had closed its doors.

We are unable to give a construction to the above quoted statements of counsel for defendants Jenning which would obviate proof either that before plaintiff could present said check to the Bank of Kenton, said bank had closed its doors, or at the time when said check was drawn there was not sufficient funds on deposit with the Bank of Kenton to the credit of Mr. Jenning to meet it; or that said Bank of Kenton would not have paid said check if it had been presented within the time prescribed by law.

This is not an action for damages, but a suit in equity based upon an alleged mistake. In attempting to make a final disposition of the matter by bringing in new parties, as defendants, the nature of plaintiff's cause of suit was not changed.

■ In the absence of special authority, well established custom, or statutes to the contrary, a bank with

which paper is deposited for collection has no authority to accept anything but money as payment: 6 Michie on Banks and Banking (Permanent Edition), p. 33, § 24, and cases there cited in footnote 74.

■ One witness testifies that he thinks that there is a custom among banks to accept drafts instead of money in payment of checks presented for collection. This does not establish that fact. Usage must be proved by the testimony of at least two witnesses: Section 9-902, Oregon Code 1930.

It appears from the record before us that the Portland branch of the Federal Reserve Bank exceeded its authority in taking the draft as payment of the check in suit. This record fails to disclose what, if any, diligence was employed by the Federal Reserve Bank in attempting to collect such substituted draft.

"As to local items, the duty of the bank receiving them for collection is to collect them." Blackfeet Livestock Co. v. Northwestern National Bank, 138 Or. 530 (5 P. (2d) 702), citing Morse on Banks and Banking, (6th Ed.), §§ 227 and 243.

At the time of the transactions here involved, this rule had not been changed by statute, and it seems from the record before us that the Northwestern National Bank failed to observe it.

These banks, however, are not parties to this suit and their liability, if any, cannot be adjudicated herein.

For the reasons herein stated, the decree of the circuit court is reversed and this suit is dismissed without prejudice to any right of suit or action by plaintiff herein against said banks or either of them.

Reversed and dismissed.

BEAN, C. J., and RAND, J., concur.

ROSSMAN, J., dissents.

ROSSMAN, J. I cannot concur in the conclusion of the majority that the Jenning's check was not presented to the Bank of Kenton upon which it was drawn within a reasonable time. Section 57-1003, Oregon Code 1930, provides:

"A check must be presented for payment within a reasonable time after its issue, or the drawer will be discharged from liability thereon to the extent of the loss caused by the delay."

Section 57-1101 provides:

"In determining what is a 'reasonable time' or an 'unreasonable time' regard is to be had to the nature of the instrument, the usage of trade or business, if any, with respect to such instruments and the facts of the particular case."

I believe that we are justified in taking notice of the fact that the Bank of Kenton was located just inside of the boundaries of the city of Portland, whereas the Northwestern National Bank was located in the business center of the city, distant from the Bank of Kenton several miles. In fact, the testimony itself quite clearly establishes those facts. The Jennings check was delivered to Joseph, Haney & Littlefield Monday, November 29. Upon the same day that firm of attorneys deposited it in the Northwestern National Bank to their credit. The latter bank upon the same day mailed the check to the Portland branch of the Federal Reserve Bank for the purpose of collection. Since the Northwestern bank was a member of the Federal Reserve System, and since the Kenton bank was neither a member of that System nor of the Portland Clearing House, the Federal Reserve Bank performed the services of a clearing house in this instance, as in all other like situations. The Jennings check reached the Federal Reserve Bank Tuesday, November 30,

and upon the same day was deposited in the mails, addressed to the Kenton bank, where it was received Wednesday, December 1.

It will be observed from the foregoing that the check handed to the payee on Monday was presented to the drawee on Wednesday, and that in the meantime it was in transit. It will also be observed that the check was handled in the way that anyone would expect such an item would be handled; that is, the party to whom it was given promptly deposited it in his own bank which, in turn, sent it to the clearing house for collection. Our statutes, as will be observed from the foregoing, modify the requirement that a check must be presented for payment within a reasonable time by specifying that a reasonable time includes the time consumed by the usage of the trade or business in which the check performs its service. Our statutes also recognize as a disputable presumption (§ 9-807, Oregon Code 1930) "that the ordinary course of business has been followed" and "that things have happened according to the ordinary course of nature and the ordinary habits of life." Since the testimony, without any contradiction whatever, shows that this transaction was in all ways regular, in harmony with the established practice, and that in Portland the mail is used for the purpose of forwarding checks in lieu of bank messengers, the above presumptions seem applicable. In other words, these presumptions, in view of the evidence, warrant the belief that ordinarily a check drawn upon the Bank of Kenton, or any other bank in the outlying sections of Portland, is sent to the clearing house or the Federal Reserve Bank by mail, is then forwarded by mail to the drawee bank, and that it does not reach the latter until the third day.

The arbitrary rule recognized in *Matlock v. Scheuerman*, 51 Or. 49 (93 P. 823, 17 L. R. A. (N. S.) 747),

that a check must be presented to the drawee the day following its receipt if the payee lives in the same place where the bank upon which it is drawn is located, or the drawer will be discharged, was greatly modified by the rule of reason applied in *Joppa v. Clark Com. Co.,* 132 Or. 21 (281 P. 834), which yielded effect to the provisions of the statute defining a reasonable time above quoted. I believe that the check was presented to the Bank of Kenton within a reasonable time.

The next difficulty which it is said prevents the maintenance of this suit is the fact that when the Bank of Kenton sent to the Federal Reserve Bank a draft drawn upon the Portland branch of the Bank of California, in order to discharge payment of the Jennings check the Reserve bank did not at once reject the draft and demand payment in cash, but presented the draft to the California bank. It is said that this act of the Federal bank constituted an acceptance of the draft as payment, thereby discharging the drawer of the check. In *Federal Reserve Bank of Richmond v. Malloy,* 264 U. S. 160 (68 L. Ed. 617, 44 S. Ct. 296, 31 A. L. R. 1261), which, together with *Cleve v. Craven Chemical Co.,* 18 Fed. (2d) 711 (52 A. L. R. 980), are the authorities upon which the Jennings principally rely, the decision recognized the right of the collection bank to accept a draft in order to facilitate payment where a custom justified such action. I believe that the evidence warrants a conclusion that it was the custom in Portland for the collection bank to receive a draft upon a downtown bank when it had mailed to the outlying bank a check for payment. One witness whose qualifications were not contested gave the following uncontradicted testimony:

"Q. I want to ask you whether it was the Bank of Kenton's custom to pay these checks in that manner?

"A. That was the custom; yes, sir.

"Q. Could you state whether or not that is the general custom in Portland between different banks?

"A. My experience in the banking business is that is the method of remitting for items sent through the mail."

Such a custom would seem to be supported by reason. It would save the outlying bank from the hazard of constantly transferring substantial sums of money from its place of business to the downtown bank, and, in the present instance, would enable the latter promptly to effect collection from the reserve of funds carried by the Bank of Kenton in the Portland branch of the Bank of California. However, it is contended that the evidence of this custom is not verified by the testimony of two witnesses, as required by section 9-902, Oregon Code 1930, which provides that usage must be proved by the testimony of at least two witnesses. The quoted excerpt from the testimony of the above witness is uncontradicted and constitutes the testimony of one witness. The uncontradicted testimony of the several other witnesses who testified that this transaction was handled in harmony with the ordinary practice, together with the aforementioned presumptions which justify the inference that the usual course of business was pursued, supply the balance of the needed testimony, in my belief.

Having arrived at the above conclusions, I decline to concur in the decision of the majority.