## IN THE OREGON TAX COURT
## REGULAR DIVISION
Property Tax

| | | |
|---|---|---|
| HENDRA KUSUMA and MEGAWATI HASAN, | ) ) ) | |
| Plaintiffs, | ) | **TC 5439** |
| v. | ) ) | |
| DEPARTMENT OF REVENUE, State of Oregon, | ) ) ) | |
| Defendant, | ) ) | |
| and | ) ) | |
| WASHINGTON COUNTY ASSESSOR, | ) ) | |
| Defendant-Intervenor. | ) | **OPINION** |

## I.  INTRODUCTION

Taxpayer appeals from a Magistrate Division decision denying the three-percent discount under ORS 311.505(3)[1] for timely payment of property tax for tax year 2020-21 with respect to his personal residence.[2]  The court held a trial at which Defendant-Intervenor Washington County Assessor (the Assessor) defended denial of the discount.[3]

---

[1] The court's references to the Oregon Revised Statutes (ORS) are to the 2019 edition.

[2] Plaintiff Kusuma appeared alone at all hearings and was Plaintiffs' sole witness at trial.  For convenience, the court refers to him, and to Plaintiffs collectively, as "Taxpayer."

[3] Defendant Department of Revenue "tender[ed] the defense of the assessment" to the Assessor and did not appear at trial.  (*See* Def's Answer at 1, ¶ 3.)

## II. FACTS

In accordance with Tax Court Rule (TCR) 56 B, several days before trial the parties exchanged documents to be proffered as exhibits in their respective cases in chief. At the start of trial, the parties agreed to waive objections to the admission of all exchanged documents. (*See* Transcript (Trans) at 13-14, November 29, 2022.) Taxpayer's exhibits are numbered 1 through 7 and the Assessor's exhibits are numbered I-1 through I-9. Based on the exhibits and on testimony at trial, the court finds that the facts recited in this section are not in dispute.

For tax year 2020-21 and for all relevant prior tax years, the Assessor offered an online option to pay property tax bills, using "e-checks, also known as ACH or * * * the automated clearinghouse system." (Trans at 75; *see* Inv's Ex I-3 at 1.) The Assessor used a vendor known as FIS as part of the online payment process.[4] (*See* Trans at 125.) One role FIS played was to "front the money" to the Assessor during the period of up to seven to ten days needed for an e-check to clear the ACH process. (Trans at 94-95.) FIS's practice was to provide payment to the Assessor on the next business day after the taxpayer completed the taxpayer's portion of the online process. (*See* Trans at 74-75; Inv's Ex I-8.) If the taxpayer's e-check eventually cleared, FIS would retain that amount for its own account; if not, FIS would notify the Assessor and recover the amount of the payment from the Assessor. The Assessor then would reverse the record of having been paid and notify the taxpayer that payment remained due and owing. (*See* Trans at 94-95; Inv's Ex I-9.)

---

[4] As will be discussed, Taxpayer disputed substantial portions of testimony and documents the Assessor proffered relating to FIS. However, the court does not understand Taxpayer to dispute the overall function of FIS as described in this paragraph. (*See, e.g.,* Ptfs' Ex 1 at 1 ("WCA (FIS) reversed payment on my Home Property Tax eCheck online payment * * *.").)

For tax years before 2020-21, Taxpayer paid the bill for the subject property online and timely. (*See* Ptfs' Ex 1 at 2.) The property tax account number for the subject property is R2006907. (Ptfs' Ex 5 (copy of bill for tax year 2020-21).)

On November 11 or 12, 2020,[5] approximately five days before the November 16 due date, Taxpayer sought to pay online the discounted amount due for his property for tax year 2020-21.[6] (*See* Ptfs' Ex 1 at 1.) Taxpayer obtained a document entitled "Tax Receipt," bearing a "Payment Date" of "11/12/2020" and an "Effective Date" of "11/11/2020," and showing a "Levied Tax" of $13,257.07, a "Discount" of $397.71, an "Amount Paid" of $12,859.36, and a "Balance" of $0.00.[7] (Ptfs' Ex 3 at 1; Inv's Ex I-4; *see* Trans at 38-40; *Id.* at 93.) On November 12, 2020, Taxpayer transferred $13,501.32 to a bank account for the purpose of paying the tax, and an amount in excess of $12,859.36 remained in that account through the November 30, 2020, bank statement closing date; however, the bank account statement shows no withdrawal or subtraction, or combination of withdrawals or subtractions, that match, or even roughly approximate, the amount of the levied or discounted tax. (*See* Ptfs' Ex 7 at 2; Trans at 56.)

---

[5] The time of Taxpayer's online session is not clear from the evidence. Taxpayer testified that he started the session on the morning of November 11, 2020, did not attempt to make a payment at that time, and returned to the session and completed the steps to make a payment shortly before midnight on November 11 or shortly after midnight on November 12. (Trans at 31-33.) The Assessor presented evidence that Taxpayer started his online session at 11:45 a.m. on November 11. (*See* Inv's Ex I-7 at 1; Trans at 128.) The court does not find it necessary to resolve whether Taxpayer attempted to pay on November 11 or November 12.

[6] The statutory due date to receive the maximum discount for full payment is November 15, but in 2020 that date fell on a Sunday, causing the due date to be November 16, 2020. *See* ORS 311.505(3) (discount and deadline); ORS 305.820(2) ("Whenever any * * * remittance is required by law to be * * * made on a day which falls on a Saturday, or on a Sunday or any legal holiday, the time specified shall be extended to include the next business day.").

[7] Taxpayer testified that the "Tax Receipt" in his Exhibit 3, page 1, is a screen shot he captured on November 11 or 12. (*See* Trans at 23, 35.) The Assessor's witness Hubbard did not describe it as a screen shot or identify when or how the document was provided to Taxpayer, but he acknowledged that the Assessor generated the receipt for Taxpayer's November 11 or November 12 transaction. (*See* Trans at 93-94 (referring to Intervenor's Exhibit I-4, identical to Plaintiffs' Exhibit 3 at 1).)

On or about November 19, 2020, Taxpayer received an email from the Assessor notifying him that his bank had rejected the payment. (*See* Ptfs' Ex 1 at 1.) Taxpayer called the Assessor's office that day, and an employee offered to try to find out what had happened. (*See id.*) On November 20, the employee called back and informed Taxpayer that the Assessor's payment processor had said that the rejection was due to an incorrect bank account number having been entered during the online payment process; specifically, the employee opined that Taxpayer had entered the property tax account number on the line provided for his bank account number. (*See id.*) Taxpayer expressed disbelief that he had made that error and asked the employee to reinstate his discounted bill so that he could pay it. (*See id.*) The employee stated that she was unable to do so, but she offered to have her manager discuss the matter with Taxpayer upon the manager's return from vacation. (*See id.*)

Sometime before November 30, 2020, the manager called Taxpayer and stated that she, too, would not be able to reinstate the discounted bill. (*See id.*) On November 30, 2020, Taxpayer went through a new online session to pay the undiscounted amount of tax and all other amounts owing for tax year 2020-21 in order to avoid further charges. (*See* Ptfs' Ex 1 at 2; Ptfs' Ex 3 at 2.) The November 30 attempt was successful.

## III.  ISSUE

Is Taxpayer entitled to the three percent discount under ORS 311.505(3) for payment of all property tax on the subject property on or before November 16, 2020?

## IV.  BURDEN OF PROOF

In the Tax Court, the "party seeking affirmative relief" bears the burden of proving its case by a "preponderance of the evidence." ORS 305.427; *Baisch v. Dept. of Rev.*, 316 Or 203, 211, 850 P2d 1109 (1993). In this case, the party seeking affirmative relief is Taxpayer, who

seeks relief from the Assessor's determination that Taxpayer is ineligible for the discount he claimed. A "preponderance" of the evidence means "the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971). The preponderance standard requires the party bearing the burden of proof to provide the court with facts supporting its position and these facts must outweigh the other party's evidence. *See Dept. of Rev. v. Bahr I*, 20 OTR 434, 448 (2012) (stating that "the court must find against the party bearing the burden of proof" when the evidence in the record favors neither side); *Dickey v. Dept. of Revenue*, 4 OTR 595, 602 (1971) (finding that taxpayer failed to prove his case "by a preponderance of the evidence" when the "evidence of either side" was "not compelling").

## V.  ANALYSIS

At trial, the parties framed the dispute as whether, in an online session on November 11 or 12, 2020, Taxpayer succeeded in accurately completing all necessary steps in the Assessor's online payment processes to receive the discount with respect to the bill for the subject property for tax year 2020-21. Before addressing that factual issue, the court reviews the governing law.

A.    *Legal Background*

1.  *Discount statute:  ORS 311.505(3)*

The right to a discount is found in ORS 311.505(3), which provides:

"(3)  Discounts shall be allowed on partial or full payments of [all taxes on property], made on or before November 15 as follows:

"(a) Two percent on two-thirds of such taxes so paid.

"(b) Three percent where all of such taxes are so paid."

The statute does not define "paid" or "payment," nor does it state at what point, in an online transaction, the tax is considered paid. *Cf.* ORS 314.397 (applicable to income taxes; "if [an

uncertified] check * * * is not paid by the financial institution on which it is drawn, the taxpayer by whom the check is tendered remains liable for the payment of the tax and for all legal penalties the same as if the check had not been tendered"). The court looks to the general law governing financial transactions for any applicable provisions.

   2. *Other relevant law governing "payment" of a debt: ORS chapter 74A*

The Uniform Commercial Code--Funds Transfers (UCC-FT) in ORS chapter 74A applies to automated clearing house transactions. *See* ORS 74A.1050(1)(e) (definition of "funds-transfer system" includes an automated clearing house). The court is not aware of an exception or other reason why the UCC-FT would not apply to payments of tax under ORS 311.505(3). ORS 74A.4060 provides, in relevant part:

> "(1) [T]he originator of a funds transfer *pays* the beneficiary of the originator's payment order:
>
> "(a) At the time a payment order for the benefit of the beneficiary is *accepted* by the beneficiary's bank in the funds transfer; and
>
> "(b) In an amount equal to the amount of the order accepted by the beneficiary's bank * * *.
>
> "(2) If payment * * * is made to satisfy an obligation, the obligation is discharged to the same extent discharge would result from payment to the beneficiary of the same amount in money [.]"

ORS 74A.4060(1)(a) (emphases added). Under that provision, the bank of the intended payee must "accept[ ]" a payment order before payment can occur. *See also* ORS 74A.4020(2) ("acceptance" by payee's bank of a payment order "obliges the sender to pay the bank the amount of the order"). This requirement that the payee's bank actually obtain control of the

/ / /

/ / /

funds is consistent with the meaning of "pay" and "payment" at the time the legislature enacted the discount law now codified as ORS 311.505(3).[8]

### 3. *Initial conclusions based on governing law and undisputed facts*

Under the Assessor's practice involving FIS, a taxpayer or other person using the online payment process never "pays" the Assessor, within the meaning of the UCC-FT. Rather, FIS pays the Assessor, and the taxpayer pays FIS, as a reimbursement, when the taxpayer's e-check clears. The Assessor's practice appears to be to treat the taxpayer's successful completion of all steps required of the taxpayer in the online payment process as a prerequisite to payment of the Assessor under ORS 311.505(3), and to treat the date the taxpayer completes those steps as the date the tax is paid for purposes of the discount. The parties have not identified a specific legal basis for this practice, but the court concludes that it need not further examine, or express any view about, the practice if the court determines that Taxpayer failed to complete the necessary steps in the online payment process. That is because a taxpayer's correct and timely data entry would be required even if the Assessor's online payment process caused payments to flow directly and immediately from the taxpayer to the Assessor, without the use of FIS or any other processor. It is undisputed here that Taxpayer's online session of November 11 or 12 failed to

---

[8] The UCC-FT did not exist in 1935, when the legislature enacted the predecessor to ORS 311.505(3). *See* Or Laws 1991, ch 442; Or Laws 1935, ch 336, § 1. However, an analysis of the meaning of "pay" and "payment" under *State v. Gaines* reveals a similar legislative intent that payment by means of a financial instrument not occur until the funds are delivered to the assessor. 346 Or 160, 171-72, 206 P3d 1042 (2009). General and legal dictionaries defined "pay" as "to discharge" a debt. *Webster's Second New Int'l Dictionary* 1796 (unabridged ed 1935). *Black's* added: "to *deliver* to a creditor the value of a debt, either in money or in goods, for his acceptance." *Black's Law Dictionary* 1339 (3rd ed 1933) (emphasis added). Contemporaneous case law clearly established that the giving of a promissory note or a check was presumed to be a "conditional, not absolute, payment"; thus, a debtor's liability to the creditor generally was restored if the debtor's bank did not actually release the funds. *See Joppa v. Clark Com. Co.*, 132 Or 21, 28, 281 P 834 (1929); *see* Oregon Code, title LVII, ch 6, § 57-619 (1930) (defining "payment in due course" of negotiable instrument); *see also* Oregon code, title LVII, ch 8, § 57-801 (1930) (listing methods of discharging negotiable instrument).

result in FIS being paid, as Taxpayer's bank statement for November 2020 shows no debit entry or combination of entries corresponding to the taxes due. (*See* Ptfs' Ex 7 at 2.) The issue, then, is whether Taxpayer completed all required steps during his November 11 or 12 online session.

The court thus proceeds to the case as presented by the parties.

B.      *Factual Analysis*

The Assessor presented two witnesses who testified about the online payment process by reference to exhibits that included screen shots showing the information and instructions presented to taxpayers using the Assessor's portal. Taxpayer testified that the Assessor's evidence is inaccurate; therefore, the court reviews the testimony and makes factual findings.

1.  *Was the six-step process in Intervenor's Exhibit I-3 in place during Taxpayer's online session November 11-12?*

  a.  Assessor's evidence

The Washington County Tax Division Manager, Gary Hubbard, testified that the online process in place on November 11 and 12, 2020, for payment by means of a personal "E-Check" required a user to proceed through a series of six screens, labeled as Steps 1 through 6. (*See* Trans at 76-83.)

The first screen (Step 1) described the options of payment by credit card (subject to a 2.45% surcharge) or by "E-check ACH Transactions" (subject to a $.95 surcharge). Included on this screen was a notification stating: "**Please ensure your bank routing & account number are entered correctly.** If an entry error occurs, loss of discount and interest may apply." (Inv's Ex I-3 at 2 (bold in original).)

The second screen (Step 2) required the user to enter the applicable property tax account number. (*See id.* at 3.) Taxpayer's property tax account number starts with the letter "R." (*See* Ptfs' Ex 5 ("R2006907").)

The third screen (Step 3) required the user to verify the property tax account number, enter the amount to be paid, and select whether to pay by "Visa/MC/Discover/American Express" or by "e-Check (ACH)." Immediately beneath the selection box appeared the following notice, preceded by the word "IMPORTANT," in red capital letters: "If paying by E-Check/ACH, please allow 7-10 business days to process. **Please ensure your bank routing and account number are entered correctly. If an entry error occurs, loss of discount and interest may apply.**" (Inv's Ex I-3 at 4.)

The fourth screen (Step 4) required the user to:

    (1) Enter the user's bank routing number;

    (2) Re-enter the user's bank routing number;

    (3) Enter the user's bank account number;

    (4) Re-enter the user's bank account number;

    (5) Enter the user's billing information (name, address, phone, email address); and

    (6) Click "Continue" to advance to the next screen.

(Inv's Ex I-3 at 5.) The routing and account numbers were required to be entered manually; the portal did not allow them to be cut and pasted. (*See* Trans at 83.)

The fifth screen (Step 5) asked the user to review the information just entered on lines 1 through 5 in the prior screen, with all but the last four digits of the routing and account numbers obscured, before clicking "Process Payment." (Inv's Ex I-3 at 6.)

Finally, after the user clicked "Process Payment," a sixth screen appeared, bearing the label: "(Step 6 of 6) Thank you for your payment. Please print this receipt and keep it for your records." The screen displayed the property account number, the amount paid, the date and time, the payment type (such as "eCheck"), and the bank account number (or a portion thereof) entered earlier. (Inv's Ex I-3 at 7; *see* Trans at 87-88.) A paragraph in the middle of the screen stated:

> "By consenting with the processing of this transaction, you are authorizing to debit your account for a one-time payment that may be processed as early as today. If you need to stop payment on this transaction you may contact your financial institution. If stop payment is not received in a timely manner, it may not be stopped. If you have any questions, you may contact our Customer Support."

(Inv's Ex I-3 at 9.)

> b. Taxpayer's evidence

Taxpayer testified that the process he went through on November 11 or 12, 2020, was "quite different" from the process that Hubbard described. (Trans at 35; 111-13.) Taxpayer's evidence for this assertion consists of one document; otherwise, he bases his position on logic. (*See* Ptfs' Ex 1 at 2, ¶ 8.) The document on which Taxpayer relies is the "Tax Receipt" showing a "Payment Date" of 11/12/2020 and an "Effective Date" of 11/11/2020. (Ptfs' Ex 3 at 1; Inv's Ex I-4.) Taxpayer testified that he captured an image of this document as a screen shot during his online session on November 11 or 12, 2020, implying that the six-step process could not have been in place because the Tax Receipt he received is not part of that process pursuant to the Assessor's testimony. (*See* Trans at 23, 35.) As a matter of logic, Taxpayer argues that it is highly unlikely that he could have entered the wrong account number in Step 4 of the six-step process shown on Intervenor's Exhibit I-3, pages 5 and 6. The screen at Step 4 has a heading "Bank Account Information," followed by four fields that require the user to enter numbers. The first field is labeled "Routing Number." The second field is labeled "Re-enter Routing Number." The third field is labeled "Account Number." The fourth field is labeled "Re-enter Account Number." (Inv's Ex I-3 at 5-6.) Taxpayer did not dispute that the screen does not permit a user to copy a number from elsewhere and paste it into the field. (*See* Trans at 38.) Taxpayer argues that it is logically implausible that he made the same mistake twice, namely, by entering his property account number in the field for his bank account number, each time without copying

and pasting. (*See id*. at 25-26.) He argues that such a double mistake is even more unlikely because, as he testified, he has long since memorized his bank account number, but he has never memorized his property tax account number; therefore, he would have had to be looking at his property tax bill while entering that number on a screen that called for him to enter "Bank Account Information." (*See id.* at 26.)

c. Assessor's rebuttal evidence

The Assessor's witness Hubbard testified that the same six-step process was in place on both November 30, 2020, when Taxpayer made his successful payment and on November 11 and 12. (*See* Trans at 77; 113 ("Did we have two systems in place at that time? No, we didn't. We had one payment system in place.").) He based his testimony on his 20-year tenure as the Assessor's Tax Division Manager, and on his participation in preparing the screen shot exhibits. (*See* Trans at Ex 76-77.) Hubbard did not directly address Taxpayer's assertion that the "Tax Receipt" in Plaintiffs' Exhibit 3 at 1 and Intervenor's Exhibit I-4 proves that a different process was in place. However, Hubbard testified that the Assessor's practice was to provide such a receipt "if requested," which allows for a fact scenario consistent with both parties' positions: Taxpayer could have both gone through the six-step process and also obtained the Tax Receipt through a separate process at or around the same time. (*See* Trans at 94.) Most importantly, the Assessor also presented direct evidence that Taxpayer entered his property tax account number in the space provided for his bank account number. Nathan Friedman, Director of Operations at the Assessor's payment processing company FIS, testified that he researched whether Taxpayer had correctly entered his account data on November 11 or 12, 2020. According to Friedman, FIS maintains "Transaction Details" reports that reflect a user's entries in Steps 4 through 6 above. (*See* Trans at 127-28.) Friedman presented screenshots of those reports for November 11, 2020, and November 30, 2020, as well as November 14, 2017, November 9, 2018, and November 12,

2019.  (*See* Inv's Ex I-7 at 1-3.)  On every such Transaction Details report, the entry for "Account Last 4" shows numbers corresponding to the last four digits of the bank account into which Taxpayer deposited $13,503.32 on November 12, 2020, except that on the Transaction Details report for November 11, 2020, the entry for "Account Last 4" is 6907, a different set of numbers that corresponds to the last four digits of Taxpayer's property tax account.  (*See id.* at 1.)

      d.   Court's findings as to six-step process

Weighing the evidence discussed above, the court finds that Taxpayer has failed to carry his burden of proof that he completed all necessary steps as instructed in his online session on November 11 or 12, 2020.  First, the court finds persuasive the Assessor's documentary evidence and the testimony of Hubbard and Friedman that the six-step process was in place on November 11 and 12, 2020 and that it functioned as those witnesses described.  Taxpayer's direct evidence that a different process was in place consists only of his own testimony of his personal recollection and one document:  the Tax Receipt in Plaintiffs' Exhibit 3 and Intervenor's Exhibit I-4.  However, the issuance of the Tax Receipt, which the Assessor does not dispute, does not prove that the six-step process was not in place.  The Assessor's witness Hubbard testified that the Assessor's practice was to issue a receipt in the form of the Tax Receipt "if requested." (Trans at 94.)  The court finds that this testimony implies that the Assessor could have issued the Tax Receipt to Taxpayer after Taxpayer went through the six-step process.[9]  Taxpayer did not prove otherwise.

_____

[9] The court notes that, standing alone, the Tax Receipt could be interpreted as a statement that Taxpayer had delivered payment and discharged his tax debt.  In contrast to the boldface disclamatory reference to the "7-10 day" waiting period in the third of six online screens, nothing in the Tax Receipt refers to a waiting period for the taxpayer's e-check to clear.  (*See* Inv's Ex I-3 at 4.)  However, because the court finds that the six-step process was in place, the court concludes that Taxpayer was required to read the Tax Receipt together with that disclaimer; he thus had notice that the Tax Receipt was subject to the ACH clearing period.

## 2. *Did Taxpayer successfully complete the six-step process?*

Having found that the six-step process was in place, the court turns to whether Taxpayer successfully completed the steps. The "Transaction Details" reports and Friedman's testimony are consistent with Taxpayer's memory that he successfully provided his bank account information in prior years. Each Transaction Details report for a prior year shows the last four digits of Taxpayer's bank account in the field for "Account Last 4." However, the Transaction Details report for tax year 2020-21 shows the last four digits of Taxpayer's property tax account number in the field intended for his bank account. While the court agrees with Taxpayer that the safeguards in the input process for Step 4 logically raise questions about whether Taxpayer could have made a data entry error with those safeguards in place, those questions do not rise to the level of evidence sufficient to carry Taxpayer's burden of proof that he made no error.

## 3. *Taxpayer's statistical arguments*

Finally, Taxpayer also alleged that statistical data he obtained from the Assessor indicate that a system failure occurred, during or after his November 11 or 12 online session, that caused his payment to be rejected. (Trans at 10:08-10:16; Ptfs' Post-Tr Br at 8-9.) Much of Taxpayer's argument is based on his view that an anomalous number of payment failures occurred at or near Taxpayer's November 11 or 12 online session. (Trans at 10:08-10; Ptfs' Post-Tr Br at 8-9.) The Assessor presented testimony and documentary evidence that rebuts that view, including evidence that apparent clusters of transaction failures may be attributed to lags in reporting due to the occurrence of weekends, the Veterans' Day holiday (November 11, 2020), and the possible absence of input staff on November 12, 2020. (Trans at 11:35-11:40.) The court finds that the weight of the evidence supports the Assessor's position that no systemic failure affected Taxpayer's attempt to pay his bill on November 11 or 12, 2020.

## VI. CONCLUSION

Now, therefore,

IT IS THE OPINION OF THIS COURT that Plaintiffs' appeal must be denied, and the three percent discount described in ORS 311.505(3) does not apply to Plaintiffs' tax year 2020-21 property tax payment.

Dated this 6th day of November, 2023.

11/6/2023 9:35:56 AM

**Judge Robert T. Manicke**